THE STATE, *ex rel.* B. W. ALEXANDER, Appellant, *v.* FRANK K. RYAN, Land Commissioner, Respondent.

June 6, 1876.

1. The St. Louis Land Commissioner, having allowed an appeal from his decision, refused to make and certify a transcript of the proceedings, without prepayment, by the party appealing, of the cost of making said transcript. *Held*, that *mandamus* was the proper remedy to compel his official action—Wagner's Statutes, page 849, section 10, which provides for rule and attachment against a justice of the peace refusing to allow an appeal, having no application to such a case.

2. When an appeal is taken from a decision of the land commissioner, it is his duty to make and certify, on demand, a transcript of his proceedings, without charge.

3. Respondent made return to an alternative writ of *mandamus*; the relator did not traverse or plead to the facts alleged in the return, but demurred; the return was declared insufficient in law, and the demurrer sustained. *Held*, that there was no foundation for an action for false return, and damages could not be assessed upon motion.

APPEAL from St. Louis Circuit Court.

*Reversed, and peremptory* mandamus *ordered.*

*Blair & Huson* and *J. H. Terry*, for appellant, cited : 2 Wag. Stat. 847, sec. 3 ; Carroll *v.* City of St. Louis, 12 Mo. 444 ; Beers *v.* Atlantic & Pacific R. R. Co., 55 Mo. 292 ; Palmer *et al.. v.* Kansas City & St. Jo. R. R. Co., 57 Mo. 249.

*Leverett Bell*, for respondent, cited : People *v.* Rockwell, 3 Ill. 3 ; People *v.* Hanlon, 29 Ill. 43 ; Watson *v.* Peyster, 1 Caines, 66 ; Johnson *v.* Brannan, 5 Johns. 268 ; Ripley *v.*

Gifford, 11 Iowa, 367; State *v.* Daily, 45 Mo. 153; Wag. Stat. 811, sec. 15.

Lewis, J., delivered the opinion of the court.

This is an application for *mandamus.* The petition shows that, in certain proceedings before the land commissioner, for the opening of California avenue, in the city of St. Louis, in which the relator was a party interested, the latter being dissatisfied with the judgment of the commissioner, and having in all respects complied with the requirements for taking an appeal to the Circuit Court, demanded of the commissioner a transcript of said proceedings, to be filed with the clerk of the Circuit Court, for the purposes of the appeal; that, although the relator duly tendered to the commissioner the fee for filing said transcript, the said commissioner refused, and still refuses, either to file said transcript or to furnish the same, so that it may be filed by the relator.

The respondent's answer to the alternative writ, after denying generally that any lawful cause for a *mandamus* is shown by the petition, states, in effect, that respondent is ready and willing to furnish said transcript whenever the relator shall pay to the city of St. Louis the reasonable cost of making it; that respondent is a salaried officer, not entitled to charge fees for any services; that he charges none in this instance; but it is unreasonable and unlawful for the city of St. Louis, at her own cost, to furnish a transcript to the relator, for his appeal, without being paid the actual expense incurred in preparing the same.

To this return the relator filed a demurrer, which the court overruled. The relator refusing to plead further, the peremptory writ was denied, and final judgment rendered for the respondent.

The law under which the appeal was taken is as follows: " Upon final judgment of the land commissioner, in every case in which exceptions are taken, an appeal may be taken to the Circuit Court of St. Louis county, within ten days

after the rendition of the same, in the mode and manner, and with the requirements, so far as applicable, of an appeal from the judgment of a justice of the peace in the county of St. Louis," etc. Sess. Acts, 1875, p. 322, sec. 3.

For the purpose of showing that the relator, in applying for a *mandamus*, has mistaken his remedy, respondent refers us to the following provision in the law concerning justices of the peace (Wag. Stat. 849, sec. 10): "If the justice fail to allow an appeal in the cause, when the same ought to be allowed, such Circuit Court, or other court having jurisdiction of such appeal, on such fact satisfactorily appearing, may, by rule and attachment, compel the justice to allow the same and to return his proceedings in the suit, together with the papers required to be returned by him."

We do not think that this law was intended to apply to such a case as the present. The clerical act of making out a transcript is no part of the process of taking an appeal. It is performed only when the appeal has been already perfected. In the case before us it is not questioned that the appeal had been fully completed and granted by the commissioner when he refused to furnish the transcript. It will be apparent, upon an examination of the two statutory provisions above quoted, that such a state of facts is not literally within the terms of either. Not perceiving that their intendment is to any different effect, we are satisfied that *mandamus* was the relator's appropriate remedy.

No provision of law authorized the city of St. Louis to charge fees for the clerical labor required on this occasion. The duty of making out and filing the transcript in every case of perfected appeal is as emphatically laid upon the land commissioner as is any other pertaining to his office. He here admits that his salary is all the compensation required by himself for the performance of every duty; but he undertakes to speak in behalf of the city of St. Louis. The city, speaking for herself, through her ordinances or

otherwise, has never made any such claim as is here preferred.   She demands no return for the salary paid to the land commissioner, beyond the benefits derived by her citizens from his official services.   The right of appeal from his decision is guaranteed by law. , The same authority, in requiring an affidavit and bond, deems these sufficient to guard against a frivolous use of the privilege, or an unjust infliction of delays and expenses against the city.   It may be, as suggested, that, in certain contingencies, a very large number of appeals will be invited by this interpretation of the law.   But it is a true one, nevertheless.   We are here to declare the law as it is.   If it be unwisely framed, or inconvenient in operation, the remedy must be applied by another authority.

We are of opinion that the alternative writ and the return thereupon show a complete case for a peremptory *mandamus*, according to the prayer of the relator.   The judgment of the Circuit Court is therefore reversed, and a peremptory *mandamus* will be issued from this court. Judge GANTT concurs ; Judge BAKEWELL not sitting.

A motion to assess damages was filed and overruled, and, on a rehearing of this motion, LEWIS, J., delivered the opinion of the court.

The relator's motion for a rehearing of his motion to assess damages was sustained at our last term, and the latter was then continued, in order to furnish every possible facility for a full presentation of the grounds upon which the relator relies.   We have now before us a carefully prepared brief, which appears to contain everything that can be said in support of the claim for damages in this proceeding.

Counsel again refer us to section 6 of the statute concerning *mandamus* (Wag. Stat. 925), which is as follows : " In case a verdict shall be found for the person suing such writ, or judgment given for him on demurrer, or by *nil dicit*, or for want of a replication or other pleading, he

shall recover his damages and costs in such manner as he might have done in a civil action for a false return, and the same may be levied by execution, as in other cases."

Counsel here assume—

1. That the "damages" provided for are those which the relator has sustained by reason of the official malfeasance or omission which the *mandamus* was intended to remedy.

2. That the recovery of such damages, in the contingencies stated, is a positive right, which cannot be qualified or denied.

3. That the words "in such manner," etc., refer only to the forms or modes of procedure whereby the damages are to be recovered, and do not, in the least degree, qualify or limit the absolute right of recovery.

A short review of the history of the law will demonstrate that neither of these positions is tenable.

Our statute is, in this section and in nearly all the rest, a literal transcript from the statute 9 Anne, ch. 20. Prior to the adoption of that statute, the return upon the first, or alternative, writ of *mandamus* was not traversable. It was treated as a record, importing absolute verity. The trial proceeded, and judgment was rendered upon the facts *as stated in the return*, whether truly or otherwise. If the return was untrue in point of fact, the only relief for the party injured was in a subsequent action against the respondent for his *false return* upon the writ. The statute shortened the process by allowing a traverse of the return, and by allowing the traverser, upon proof of its falsity, to recover his damages, etc., "in such manner as he might have done in a *civil action* for a false return"— *i. e.*, for the false return already made in that case, and shown so to be. In a former opinion this court said: "The civil action for a false return, here referred to, is an action against the defendant for his false return upon the alternative *mandamus*. It does not mean, as counsel's argument seems to imply, any independent common-law proceeding for a false

return, against a sheriff or other officer.'' Such, in fact, has been the uniform interpretation in England ever since the adoption of the statute, as well as in the States of the Union wherein the same statute has been enacted.

But, aside from historical adjuncts, our interpretation is the only one which can be reconciled with the other provisions of the Missouri statute. The 9th section, for example, provides that, '' if any damages shall be recovered, by virtue of this chapter, against any person making return to such writ, he shall not be liable to be sued in any other action or suit *for making such return.*'' If counsel's interpretation of the 6th section be correct, the more appropriate protection would be against '' any other action or suit '' for the original malfeasance or omission. Why provide against another suit for making the return, if the damages here recoverable are for a different cause of action?

The 4th section, supplementing the provisions for making up the issues, directs that '' such further proceedings shall be had therein for the determination thereof, and in such manner, as might have been had if the person suing such writ had brought his *civil action for false return.*'' Here, again, is an unmistakable provision for settling the rights of the parties as they would have been settled in the common-law action upon the return, in the absence of statutory permission to take issue thereupon instead.

Again, the 2d section provides : '' When any writ of *mandamus* shall be issued, and return shall be made thereto, the person suing or prosecuting such writ shall *plead to or traverse* all or any of the material facts contained in such return.'' Here is no provision for a demurrer. It follows that all the benefits of the statute, including the summary recovery of damages, can apply only to an issue of *fact* raised upon the return. The relator may demur. But, if he does so, he is remitted to his own common-law position as to damages, etc., and can claim no privileges under the statute. This harmonizes with the unbroken course of

English adjudications, in which it has been held that, if the return be found insufficient *in law*, no damages can be recovered in any form of proceeding. *Enfield* v. *Hills*, 2 Lev. 236–238 ; *Rex* v. *London*, 3 B. & Ad. 276, 279 ; *Rex* v. *London*, 5 B. & Ad. 233. Here it may be asked, what means the 6th section, where it provides for damages to the person suing the writ, if judgment be given for him " on demurrer, or by *nil dicit*, or for want of a replication or other pleading?" The answer is plain enough. By the 3d section it is provided that " the person *making such return* shall reply, take issue, or *demur* to the *pleading* of the party suing or prosecuting such writ." When we remember that all these provisions are literally copied from the statute of Anne, and that no common-law writer or law-maker ever confounded a "plea" or "pleading" with a demurrer— which implies, simply, a refusal to plead—it is easy enough to understand that the judgment upon demurrer referred to in the 6th section can be none other than a judgment on the respondent's demurrer to the relator's pleading ; the judgment "by *nil dicit*, or for want of a replication or other pleading," will be, in like manner, a result of the respondent's failure to " reply, take issue, or demur," as required by the 3d section. In any one of these contingencies the relator's success will necessarily arise upon the issue of fact tendered by his traverse or plea to the return. It will never arise from the insufficiency in law of the return to the writ. This, again, is in harmony with the English rule already mentioned, that no damages could be recovered in the action for a false return unless the return had been adjudged and declared sufficient in law. The foregoing general principles have been uniformily recognized in English interpretations of the statute of Anne, and counsel do not show us why the same language, drafted into a Missouri statute, should be differently construed here.

The Massachusetts statute referred to by counsel, although differently framed, adheres to the same principles. After

authorizing a traverse of the return (and also a demurrer),. it provides that, " if the party suing the writ *maintains the issue* on his part, his damages shall be assessed," etc. Like our 9th section, but in more explicit terms, it then declares that " no action shall be maintained for a false return *to a writ of mandamus.*" This, again, helps us to perceive that, wherever, in these statutes, reference is made to the action for a false return, the law-maker is contemplating the return upon the alternative *mandamus,* and not a mere analogy with ordinary actions, for false return, against sheriffs, etc.

It should now sufficiently appear that the damages recoverable under the statute are not on account of the injury originally sustained by the person suing the writ, or any inconvenience directly resulting therefrom. Redress. for such injury or inconvenience must be sought, if at all,. in a separate action. It has been held, however, that the party injured by an official omission of a ministerial officer may have his choice between the suit for damages and the remedy by *mandamus;* but he cannot pursue both. . *Kendall* v. *Stokes,* 3 How. 87. The relator here, it may be remarked, would have us permit him to pursue both. remedies in the same proceeding.

It should also appear that the statutory expression,. "in such manner," etc., means nothing more nor less. than under the like conditions and limitations as would apply to a civil action for a false return upon the alternative writ, if there were no statute in the case. It follows that the relator, in this instance, is entitled to the assessment of damages demanded, if he could have recovered them in such an action, and not otherwise.

The relator demurred to the respondent's return. The. decision of this court, in effect, sustained his demurrer. Thus the return was adjudged insufficient in law ; and, for this reason, as well as because the facts alleged in the return were neither traversed nor pleaded to, there could have

been no foundation for an action for false return. The relator is, therefore, not entitled to an assessment of damages.

The reasoning and authorities with reference to damages on an injunction bond have no application here. There, it is the defendant whose damages are assessed. He has not only been restrained in the exercise of a lawful right, but has also been forced into court against his will. The relator here comes into court voluntarily. True, he finds this necessary in order to enforce his rights. But the same may be said of every plaintiff in debt, covenant, or trespass. We have no precedent of an assessment of damages in any such case, because of the expenses or inconvenience of the suit. The motion is overruled. Judge HAYDEN concurs; Judge BAKEWELL not sitting.