(111 App. Div. 741)

PEOPLE ex rel. MICHALES v. AHEARN, President of Borough of Manhattan.

(Supreme Court, Appellate Division, First Department. March 9, 1906.)

1. MANDAMUS—COMPELLING REINSTATEMENT IN OFFICE—PARTIES.

The present incumbent, appointed to fill the position from which relator was removed, is not a necessary party to mandamus to compel relator's reinstatement.

2. MUNICIPAL CORPORATIONS—HEAD OF BUREAU—REMOVAL—REINSTATEMENT.

To entitle the head of a bureau to the protection of Laws 1901, p. 636, c. 466, § 1543, which provides that no head of a bureau shall be removed until he has been allowed an opportunity to make an explanation, an alternative writ of mandamus to compel his reinstatement must allege that the bureau from which he was removed was one created by charter or by an official who was given by the charter authority to create bureaus.

Patterson and Laughlin, JJ., dissenting.

Appeal from Special Term, New York County.

Mandamus by the people, on the relation of William H. Michales, against John F. Ahearn, president of the borough of Manhattan. From an interlocutory judgment overruling a demurrer to an alternative writ upon the ground that there was a defect of parties, and that the alternative writ did not state facts sufficient to constitute a cause of action, defendant appeals. Reversed.

Argued before O'BRIEN, P. J., and PATTERSON, INGRAHAM, LAUGHLIN, and CLARKE, JJ.

Theodore Connoly and W. B. Crowell, for appellant.
Tompkins McIlvaine, for respondent.

INGRAHAM, J. The relator presented a petition to the Supreme Court, alleging that on or about the 1st day of January, 1902, he was duly appointed to the position of superintendent of sewers for the borough of Manhattan, the city of New York, by the then president of the said borough; that he thereupon accepted the said position and duly qualified and has duly performed the duties of that position up to the 4th day of January, 1904; that on the 4th day of January, 1904, the relator was ejected from the said position by persons claiming to act under the authority of the new president of the borough of Manhattan of the city of New York, the defendant in this proceeding; that in the office of the president of the borough of Manhattan there is the office of the commissioner of public works and that in the office of the commissioner of public works there were and had been at all times in the peti-

tion mentioned numerous bureaus, among which was the bureau of sewers; that there was a chief of said bureau of sewers who was designated as the "Superintendent of Sewers"; that no charges had ever been preferred against the relator, nor was he allowed an opportunity of asking an explanation concerning his removal; and that such removal was contrary to the Constitution of the state of New York and the civil service law, the rules made thereunder by the municipal civil service commission, and the provisions of the charter of the city of New York. On this petition an alternative writ of mandamus was granted. The defendant demurred to the writ upon the grounds (1) that there was a defect of parties; and (2) that the writ does not state facts sufficient to constitute a cause of action. I do not think that the present incumbent of the position, appointed to fill the position from which the relator was removed, is a necessary party to this proceeding to reinstate the relator. While it may be that the present incumbent could be made a party as interested in the result of this proceeding, his presence is not at all essential to a complete determination of the question at issue between the relator and the defendant, the appointing officer. If the relator's removal was illegal, the final order reinstating him would be a command to the appointing officer; but the relator could obtain no relief in this proceeding against the person who has been appointed to the position for which he had been removed. The cases in which a veteran applies for a mandamus, where a summary proceeding by way of mandamus is given him, where he has been denied his right to priority of appointment, do not apply to a case like the present, for in such a case there was a vacancy to which an appointment was duly made, in violation of the right of a veteran to priority to appointment, and in determining the question there is involved the right of the appointee to the position to which he had been appointed, and in such a proceeding he is entitled to be heard. But in this case the relator was duly appointed and in office. If his removal was illegal, he has never been deprived of his office, and this application is to enforce his right to continue in the office from which he was illegally removed. The person appointed in his place, if he was illegally removed, has no right to the office and never had a right to it. If the relator's contention is correct, he still holds the position and is entitled to its emoluments, and this proceeding is to enforce that right. With the validity of the appointment of the person who has taken his place he has no concern. See People ex rel. Corkhill v. McAdoo, 98 App. Div. 312, 90 N. Y. Supp. 689.

The second question is as to whether the alternative writ states facts sufficient to entitle the plaintiff to a peremptory writ. The relator relies upon section 1543 of the charter of New York (chapter 466, p. 636, of the Laws of 1901), which is as follows:

"The heads all departments and all borough presidents (except as otherwise specially provided), shall have power to appoint and remove all chiefs of bureaus (except the chamberlain), as also all clerks, officers, employés and subordinates in their respective departments, except as herein otherwise specially provided, without reference to the tenure of office of any existing appointee. But no regular clerk or head of a bureau, or person holding a

position in the classified municipal civil service subject to competitive examination, shall be removed until he has been allowed an opportunity of making an explanation."

The relator's right to reinstatement must depend upon his holding the position of the head of a bureau within this section of the charter. The alternative writ alleges that on or about the 1st day of January, 1902, the relator was duly appointed to the position of superintendent of sewers for the borough of Manhattan, city of New York, by the then president of the said borough, thereupon accepted the said position and duly qualified; that "in the office of the president of the borough of Manhattan there is the office of the commissioner of public works, and that in the office of the commissioner of public works there are, and have been at all times hereinafter mentioned, numerous bureaus, among which is the bureau of sewers; that there is a chief of said bureau of sewers, and said chief is designated as the 'Superintendent of Sewers'"; and then follows a statement as to the duty of the relator as such superintendent. This provision of the charter, so far as it relates to the head of a bureau, was included in the charter of 1873 and in the consolidation act (chapter 410, p. 1, Laws 1882) in substantially the same form as in the present charter. By each of those charters certain bureaus were expressly created. Under the charter of 1873 (section 28, c. 335, p. 491, Laws 1873), no regular clerk or head of a bureau could be removed "until he has been informed of the cause of the proposed removal, and has had an opportunity of making an explanation"; and it was held by the Court of Appeals in the case of People ex rel. Emerick v. Board of Fire Commissioners, 86 N. Y. 149, that this provision related only to the head of those bureaus established by the charter, and not to bureaus established by the departments without legislative authority merely for administrative purposes, and this principle was reaffirmed in the case of People ex rel. Cummings v. Koch et al., 2 N. Y. St. Rep. 110, affirmed without opinion in 103 N. Y. 650.

In the present charter (chapter 466, p. 636, of the Laws of 1901) we find that there are created separate bureaus in several departments. Thus there are five bureaus in the finance department (section 151); three in the law department (sections 258, 259, 260); three in the fire department (section 727); two in the health department (section 1179); and the bureau of buildings in the office of each borough president (section 435). Except, however, in relation to the law department and the tenement house department, there is no authority in the charter granting power to the heads of departments to create additional bureaus; and if the rule adopted in the cases above cited is to be applied, and this provision held to apply only to the bureaus specifically created by the charter, or created under the power conferred by it, it would appear that the relator is not the head of a bureau and protected from removal. By section 96 of the charter (Laws 1897, p. 30, c. 378) there was created in the city of New York a department of sewers, the head of which was called the "Commissioner of Sewers" (section 555). By section 458 of the charter the commissioner of sewers was authorized to organize such bureaus as he should from time to time

deem necessary to the proper discharge of the duties of his department. By section 1608 of the charter of 1897 (chapter 378, p. 555, Laws 1897) all provisions of the consolidation act, so far as the subject-matter thereof is revived and repeated in the charter, are repealed. By that act a department of sewers was created, the head of which was called the "Commissioner of Sewers," who was to be appointed by the mayor. He was given cognizance and control of all subjects relating to public sewers and drainage of the city. Sections 555 and 556. No bureaus, however, were created in his department, and no authority was given to him to create bureaus therein. By section 389 of the present charter (Laws 1901, p. 166, c. 466) all powers theretofore vested in the commissioner of sewers were vested in the city of New York, "and as matter of administration devolved upon the president of the borough within which is situated the territory to which or to the official representatives of which said powers and duties heretofore appertained, to be by him executed in accordance with the provisions, discretions and limitations of this act"; and by section 390 the commissioner of sewers, as constituted by the charter of 1897, was required to turn over and deliver to the borough presidents of the various boroughs included within the city of New York all maps, plans, etc., relating to sewers. By section 383 of the charter the president of the borough was authorized to appoint and remove at pleasure a commissioner of public works for his borough, who may discharge all of the administrative powers of the president of the borough relating to streets, sewers, public buildings, and supplies conferred upon him by the act. He was given power to appoint a secretary and such assistant clerks and subordinates as he might deem necessary, if provision is made therefor by the board of estimate and apportionment and the board of aldermen; and such secretary, assistant clerks, and subordinates were to hold office at the pleasure of the president, subject to the provisions of the civil service law. He was then given cognizance and control of all subjects relating to the public sewers and drainage of his borough. His power to appoint and remove all of his subordinates is unlimited, except so far as he should be restrained by the civil service act. There is established a bureau of buildings in the office of each borough president (section 435), the president of the borough being authorized to appoint a superintendent of buildings for the borough, and the bureau of buildings is the only bureau authorized by the charter in the office of the borough president.

There is no bureau of sewers thus established by the charter, and no authority that I can find which authorizes the president of the borough to constitute a bureau of sewers in his department. The powers vested in the commissioner of sewers under the charter of 1897 were vested in the city of New York. Section 389. Whatever power thenceforth existed in the commissioner of sewers under the charter of 1897, or under the consolidation act, to create separate bureaus, was thus vested in the city, and, if it was sought to exercise powers establishing a bureau, it would have to be done by the legislative body of the city (the board of aldermen). The alternative writ of mandamus does not allege that there has ever been created in the office of borough president,

either by the board of aldermen or by any other lawful authority, a bureau of sewers. The alternative writ alleges that in the office of the president of the borough of Manhattan there is the office of the commissioner of public works, and that in the office of the commissioner of public works there are and have been at all times thereinafter mentioned numerous bureaus, among which is the bureau of sewers, and that there is a chief of said bureau of sewers, and that said chief is designated as superintendent of sewers; and this allegation is admitted by the demurrer. I do not think this allegation is sufficient to sustain this proceeding, because the provision of the charter upon which the relator relies only applies to the heads of bureaus specifically created by the charter, or under its authority; and to entitle the relator to the protection of this provision it is necessary that he should allege that he was at the head of a bureau created by the charter, or by an official who was given by the charter authority to create bureaus.

The fact that there was in the office of the commissioner of public works bureaus, of which one was the bureau of sewers, unless such bureau was actually created by the charter, or by an officer authorized by the charter to create bureaus, would not be sufficient to protect the person at the head of such bureau, if such bureau was not one created by the charter or under its authority. People ex rel. Emerick v. Board of Fire Commissioners, 86 N. Y. 149. To entitle the relator to this relief, I think the alternative writ must allege that the bureau of which he claimed to be a member was one established by the charter. There is no allegation that this bureau was established by municipal authority, or that it was established by the president of the borough, or the commissioner of public works. He simply alleges that there existed in the office bureaus. That is not an allegation that bureaus had been established under the provisions of the charter to which the section of the charter upon which he relies applied.

I think the judgment appealed from should be reversed and the demurrer sustained, with $50 costs and disbursements. All concur, except PATTERSON and LAUGHLIN, JJ., who dissent.