PEOPLE ex rel. WALKER v. AHEARN, Borough President.

(Supreme Court, Appellate Division, First Department. June 17, 1910.)

1. APPEAL AND ERROR (§ 1099*)—DETERMINATION—SUBSEQUENT APPEAL—LAW OF THE CASE.

The decision of the .court on appeal from the denial of an alternative writ of mandamus to compel reinstatement of relator to the position of superintendent of the bureau of public buildings and offices in the borough of Manhattan, from which he was removed by the president of the borough, that the president had authority to create the bureau, is conclusive on a subsequent appeal from a final order directing reinstatement of relator and from a judgment against the president individually for damages.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4370-4379; Dec. Dig. § 1099.*]

2. MANDAMUS (§ 177*)—AWARD OF DAMAGES—STATUTES.

Code Civ. Proc. § 2088, providing that where a return has been made to an alternative writ of mandamus, issued on the relation of a private person, the court, on granting a peremptory writ, must also, where relator so elects, award to him, against defendant who made the return, any damages which the relator could recover in an action against defendant for a false return, etc., authorizes the recovery in mandamus proceedings of damages which could be recovered by relator on the same facts in another action, either by statutory authority or for a common-law liability, but damages may not be awarded against an officer misconstruing statutory provisions or the legal effect of the official acts of his predecessor with respect to the creation of an office, and wrongfully removes the incumbent who obtains a peremptory writ commanding his reinstatement.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. § 395; Dec. Dig. § 177.*]

3. MANDAMUS (§ 176*)—SCOPE OF RELIEF—REINSTATEMENT IN OFFICE—RECOVERY OF SALARY—STATUTES.

Mandamus compelling the reinstatement of one to a municipal office from which he had been wrongfully removed, should not reinstate him with the right to his salary from the time of his removal, where it appeared that the office had been filled by a third person, and where the city had paid the salary to the third person, for the city was not liable to relator for such salary, and his only recourse was by action against the third person, but in so far as the city had not paid the salary. relator could recover it from the city.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. § 392; Dec. Dig. § 176.*]

4. MANDAMUS (§ 177*)—AWARD OF DAMAGES—STATUTES.

The city of New York is not a party to a mandamus proceeding to compel the president of the borough of Manhattan to reinstate relator to a position from which he had been removed by the president, and the court directing the reinstatement of the relator may not award damages in his favor against the city by virtue of Code Civ. Proc. § 2088, authorizing the award of damages in mandamus proceedings, the authority to award

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

damages being confined to awarding damages against the party making the return.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. § 395; Dec. Dig. § 177.*]

Appeal from Special Term, New York County.

Mandamus by the People on the relation of William H. Walker, against John F. Ahearn, as President of the Borough of Manhattan, City of New York, to compel the reinstatement of relator to a position in the Borough. From an order denying a motion made on the minutes for a new trial, from a final order directing that a peremptory writ for mandamus issue to defendant commanding him immediately to reinstate relator to the position from which he was removed, together with all the rights, benefits, and emoluments thereof, and from a judgment entered against defendant individually, defendant in his official capacity, and individually, separately appeals, with notice that the final order will be reviewed on each appeal. Judgment and final order modified and affirmed.

See, also, 121 N. Y. Supp. 819.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

Terence Farley (Theodore Connoly, on the brief), for appeals taken in name of corporation counsel.

Charles L. Hoffman (Henry A. Friedman, on the brief), for appellant Ahearn individually.

Herbert C. Smyth (John W. Browne and Frederic C. Scofield, on the brief), for respondent.

LAUGHLIN, J. This is an application for a mandamus to compel the reinstatement of the relator to the position of superintendent or head of the bureau of public buildings and offices in the borough of Manhattan, city of New York, from which he was removed by appellant Ahearn, as president of the borough of Manhattan, on the 16th day of May, 1907. The application was originally denied at Special Term, but on appeal to this court the order was reversed and an alternative writ was granted. 129 App. Div. 912, 114 N. Y. Supp. 1142. The theory upon which the proceeding was instituted was that the position held by the relator was the head of a bureau, and that he could not be lawfully removed therefrom without notice and an opportunity to explain the charges made against him, pursuant to the provisions of section 1543 of the Greater New York Charter (Laws 1901, c. 466). He was removed without notice or opportunity to make an explanation of charges preferred against him. The theory upon which the president of the borough acted was that the position held by the relator was not the head of a bureau within the contemplation of the provisions of said section of the charter, and that no bureau of public buildings and offices in the borough of Manhattan had been lawfully created. On the former appeal to this court that question was fully argued, and the effect of the decision of this court in granting the alternative writ necessarily was that the borough president was authorized to create such

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

a bureau, and that mandamus was the proper remedy, for otherwise nothing to avail the relator could have been accomplished by issuing the alternative writ. A question of fact was presented by the petition and opposing affidavits as to whether or not such a bureau had been created by the borough president, and this necessitated the granting of an alternative writ of mandamus. On the trial before the court and jury on the alternative writ and the return thereto, the material facts with respect to the creation of the bureau were matters of record, and thereupon a question of law was presented as to whether the acts of the borough president were sufficient in law to constitute the due creation of the bureau. The court ruled that they were, and accordingly directed a verdict in favor of the relator. On proof of a computation of the amount of the relator's salary during the period from the time of his removal until the date of the trial, the court directed the jury to assess the relator's damages in that amount with interest. No issue had been presented with respect to these damages, and the court acted solely on the theory that the provisions of section 2088 of the Code of Civil Procedure afforded authority therefor. The matter was then brought on at Special Term, and a final order entered directing that a peremptory writ of mandamus issue to the defendant, Ahearn, as president of the borough, commanding him to reinstate the relator "together with all the rights, benefits, and emoluments" of the office, and that the relator recover of Ahearn individually the sum of $10,723.30 damages, being the amount of said salary with interest, together with costs and disbursements to be taxed, and that the relator have judgment and execution therefor. The judgment follows substantially the directions contained in this order.

Regarding as we do the decision on the former appeal as res adjudicata of the question with respect to the power of the president of the borough of Manhattan to create the bureau, we are of opinion that the uncontroverted evidence sufficiently shows that he exercised the authority in a manner to make his acts effective for that purpose.

Said section 2088 of the Code of Civil Procedure, under which relator's damages have been assessed, provides as follows:

"Where a return has been made to an alternative writ of mandamus, issued upon the relation of a private person, the court, upon making a final order for a peremptory mandamus, must also, if the relator so elects, award to the relator, against the defendant who made the return, the same damages, if any, which the relator might recover, in an action against that defendant, for a false return. The relator may require his damages to be assessed, upon the trial of an issue of fact, if the verdict, report, or decision is in his favor. Where he is entitled to a final order, for any other cause, he may require them to be assessed as in an action. Such an assessment of damages bars an action for a false return."

Throop in his note to this section states in substance that it was taken from sections 57 and 58 of title 2 of chapter 9 of part 3 of the Revised Statutes (1st Ed.), which, as he puts it, were "consolidated, without material alteration, except possibly, by the addition of the clauses in the first sentence, allowing the relator to elect to take judgment for damages and of the last three sentences. It is supposed, however, that the effect of these amendments is merely to remove the obscurities of the original. As already stated, in the note to section 2088,

ante, the origin of the provisions relating to damages for a false return, is explained, and their meaning rescued from considerable obscurity, by Marvin, J., in People v. Richmond Supervisors, 28 N. Y. 112." Said sections 57 and 58 of the Revised Statutes were as follows:

"Sec. 57. In case a verdict shall be found for the person suing such writ, or if judgment be given for him upon demurrer or by default, he shall recover damages and costs, in like manner as he might have done in such action on the case as aforesaid; and a peremptory mandamus shall be granted to him without delay.

"Sec. 58. A recovery of damages by virtue of this article, against any party who shall have made a return to a writ of mandamus, shall be a bar to any other action against the same party, for the making of such return."

The action on the case to which reference is made in said section 57 relates to the provisions of section 55 of the same title of the Revised Statutes, which after providing that the person prosecuting the writ may demur or plead to all or any of the material facts contained in the return thereto, and that the person making the return "shall reply, take issue or demur," then provides "and the like proceedings shall be had therein for the determination thereof, as might have been had, if the person prosecuting such writ had brought his action on the case for a false return."

Said sections 57 and 58 were taken from sections 2 and 3, vol. 1, Rev. Laws, p. 107, which was a re-enactment without change of the provisions of chapter 11 of the Laws of 1788. The original statute, as appears by the revisers' notes to the Revised Laws and by the decision of the Court of Appeals in People v. Supervisors of Richmond, 28 N. Y. 112, was taken from the statute of 9 Anne, c. 20, and it is therefore to be construed in the light of the rules of pleading at common law. It authorized the party applying for the writ "to plead to or traverse all or any of the material facts contained" in the return, and it provided that the party making the return "shall reply, take issue or demur" to the pleading or traverse of the moving party. Inasmuch as the only demurrer for which provision was made in the original statute was a demurrer interposed by the party prosecuting the writ, and he was authorized to recover his damages as in an action for a false return in the event of judgment in his favor on the demurrer, the effect of such an adjudication would be, ordinarily at least, that the return was false. In the revision of the statute made by the original enactment of the Revised Statutes, the word "demur" was substituted for the word "traverse" in the quotation last made, which literally contemplated a demurrer to the return. The effect of this change, if the statute be construed literally was to give the relator the right to recover his damages on an adjudication that his demurrer to the return was well taken, which could only be true where the return was insufficient in law upon the face thereof, and would not involve any adjudication with respect to the falsity of the return, for it would on such demurrer necessarily be assumed to be true. In State ex rel. v. Ryan, 2 Mo. App. 303, under a similar statute enacted literally from the same origin, it was held that the Legislature only intended to authorize the recovery of damages where the adjudication was such as to show the falsity of the return. That question, however, may not be regarded as

an open one in this jurisdiction in view of the decision of the Court of Appeals in People ex rel. Goring v. Wappingers Falls, 151 N. Y. 386, 45 N. E. 852, where that court reversed a decision of the Special Term, which had been affirmed by the General Term, and had been made upon the theory that the Legislature did not intend to authorize the recovery of damages in a mandamus proceeding excepting where the return was false. That decision must be regarded by this court as authorizing a recovery of damages in some instances, at least, even though there be no adjudication that the return was false. It does not, however, hold that the Legislature intended to give a cause of action where one did not exist. At most it merely holds that the Legislature intended to authorize the recovery in the mandamus proceeding of damages which could be recovered on the same facts in another action or proceeding, either by virtue of some statutory authority or of a common liability.

There is here no adjudication that the return was false. At most the president of the borough either misunderstood the true construction of statutory provisions or the legal effect of the official acts of his predecessor in office with respect to the creation of the bureau, and for aught that appears he may have acted on the advice of the corporation counsel, who was constituted by law his legal adviser in the performance of his official duties. There was no charge or issue concerning his motive or his purpose in removing the relator. Surely he cannot in these circumstances for a mere error of judgment with respect to the law, made innocently and in good faith, be liable to a subordinate whom he removes. It would be contrary to public policy to hold officials liable for damages in a civil action for an unauthorized removal of a subordinate in the absence of bad faith or improper motive. The order and judgment, therefore, in so far as it is adjudged that Ahearn is individually liable for the amount of this salary, is unauthorized.

We are of opinion that the provision by which the relator is reinstated with the right to his salary from the time of his removal was unwarranted. It appears that the office was filled by the appointment of Voorhis, who has been brought into the proceeding. It is probable, although it does not appear, that the city has paid some or all of this salary to him. If so it is not liable to the relator, for it would only become liable to him from the time his rights were adjudicated, and his only recourse would be an action over against the de facto officer who has received it. Higgins v. Mayor, etc., of New York, 131 N. Y. 128, 30 N. E. 44; Dolan v. Mayor, 68 N. Y. 274, 23 Am. Rep. 168; McVeany v. Mayor, 80 N. Y. 185, 36 Am. Rep. 600; Terhune v. Mayor, etc., City of New York, 88 N. Y. 247; Demarest v. Mayor, 147 N. Y. 203, 41 N. E. 405; Martin v. City of New York, 176 N. Y. 371, 68 N. E. 640. See, also, Jones v. City of Buffalo, 178 N. Y. 45, 70 N. E. 99. In so far as the city has not paid the salary to another, the relator would undoubtedly be entitled to recover it in an action (Dolan v. Mayor [supra]), and the effect of this statutory provision, notwithstanding the fact that there is no false return, would be to authorize him to recover it here were the city a party to the proceeding, but the city is not strictly speaking a party to the proceeding and did not make

123 N.Y.S.—54

the return, and the authority to award damages is confined to awarding them against the party who made the return.

The judgment and final order are therefore modified by limiting the provisions thereof awarding relief to the reinstatement of the relator with costs of the proceeding against the respondent as president of the Borough of Manhattan, city of New York, that being the capacity in which the proceeding was instituted against him, and, as modified, affirmed, without costs.

CLARKE, J., concurs.

INGRAHAM, P. J., I concur with Mr. Justice LAUGHLIN. Under the provisions of section 2088 of the Code of Civil Procedure, where a writ of mandamus is finally ordered, the relator is entitled to recover his damages against the defendant who has interposed a return, and these damages were to be "the same damages, if any, which the relator might recover in an action against the defendant for a false return." Now, it seems perfectly clear that any damages that the relator had sustained before the return was interposed could not be the damages caused by a false return, assuming that a "false return" is synonymous with an insufficient return. In this case, if no return had been interposed, the relator would have been entitled to a writ to reinstate him in the position from which he had been removed. The only damage, therefore, which could be caused to the relator by reason of a false or insufficient return was his salary from the time that he would have been entitled to receive it after his reinstatement and the time of the final order reinstating him.

I am inclined to think that the relator was entitled to have his damages assessed and a recovery therefore by the final order. People ex rel. Goring v. Wappingers Falls, 151 N. Y. 386, 45 N. E. 852, but as such damages were there caused by the interposition of the return, the relator was confined to such an amount as would compensate him for the loss that he had sustained by being kept out of his office from the time that he would have been reinstated if no return had been interposed to the date of the final order. The relator did not claim these damages, and there seems to be nothing in the record from which the amount could be determined.

I therefore concur with Mr. Justice LAUGHLIN in reversing the order as against the defendant personally.

MILLER, J., concurs.

SCOTT, J.: I concur in the modification of the final order, and should be willing to go further and vote for a reversal of both order and judgment, except that we are concluded by our former decision allowing an alternative writ of mandamus to issue. 129 App. Div. 912, 114 N. Y. Supp. 1142. By that decision, although no opinion was written, we necessarily held that upon the facts alleged by the relator, and afterwards proven upon the trial, the relator was entitled to reinstatement. A re-examination of the question has caused me to great-

ly doubt the correctness of that decision. Section 1543 of the Revised Charter of the City of New York protects, inter alia, heads of bureaus from summary removal without an opportunity of making an explanation. This applies to heads of bureaus authorized by law. The mere fact that the head of a department, as a matter of administrative detail, calls the employés engaged in any particular class of work a "bureau," and designates one of those employés to be its head, does not constitute the latter the "head of a bureau," within the meaning of the charter, and entitle him to the protection of the section above cited. This appears to have been the situation in which the relator was placed. The case of People ex rel. Collins v. Ahearn, 193 N. Y. 441, 86 N. E. 474, upon which relator relies, dealt with the power of the borough president to create a bureau of highways. It was found that he had such power, not because the Revised Charter of 1901 expressly conferred that power upon him, but because it conferred upon him *all* the powers which prior to January 1, 1902, had been conferred upon the commissioner of highways, who had possessed, by virtue of section 458 of the Charter of 1897 (Laws 1897, c. 378), power "to organize such bureaus as he might from time to time deem necessary." Hence, as it was held, so far as concerned the highways, the power to organize bureaus was conferred upon the borough president. For the same reasons, and upon a similar state of the law, People ex rel. Michaels v. Ahearn, 111 App. Div. 741, 98 N. Y. Supp. 492, was overruled. The present case is different. The duties assigned to relator were formerly imposed upon the commissioner of public buildings, lighting and supplies. Sections 572 to 588, Charter of 1897. By the charter of 1901 the duties of this commissioner were redistributed, a part being imposed upon the department of water supply, gas and electricity. Sections 519–530. Upon the Commissioner of Public Works was devolved the cognizance and control "of the construction, repairs * * * of public buildings. * * *" Section 383, subd. 10. Nowhere in the Revised Charter of 1901 is there to be found authority in the borough president to create a bureau of public buildings and offices, either by direct enactment, or by reference to the power in that regard formerly possessed by the commissioner of public buildings, lighting and supplies. Instead of that the Revised Charter conferred upon the borough president power to appoint a commissioner of public works, who was especially charged with exercising the administrative powers of the president of the borough relating to public buildings and supplies. The authority of the borough president to create a bureau of highways, and a bureau of sewers, derived by reference from the charter of 1897, does not exist in the case of public buildings because no such reference is to be found, with respect thereto, in the Revised Charter of 1901. Hence, as it now appears to me, the Collins Case is not decisive of the present case.