4]　　　AUGUST TERM, 1917.　　　303

State ex rel. Bautz v. Harper, 166 Wis. 303.

STATE EX REL. BAUTZ, Respondent, vs. HARPER, Building
Inspector, Appellant.
SAME, Appellant, vs. SAME, Respondent.

*October 26—December 4, 1917.*

*Municipal corporations: Building permits: Garages: "Business sec-
tion:" Ordinances construed: Mandamus: Relator's right to
damages: Officers: Honest mistakes in performing quasi-judicial
duties.*

1. Sub. (d), sec. 474, Milwaukee Code of Ordinances,—providing
that "when two thirds of the lots fronting on one street in any
block of the city . . . not within the business section are occupied
by buildings devoted to residence purposes," no public garage
shall be erected on any lot in such block on such street,—is not
applicable unless two thirds of all the lots of the block fronting
on one street are occupied as stated, even though some of such
lots are within the "business section." Thus where, of the
twelve lots in a block fronting on one street, two and the greater
part of a third were within the business section and were not
occupied by dwellings, while six of the remaining lots were so
occupied, the building inspector was not justified in refusing a
permit to erect a garage on a site which included the part of said
third lot not within the business section.
2. Where the "business section" of a city as defined by ordinance
included a district described: "Greenfield avenue.—Beginning
at the intersection of First avenue to one hundred and fifty
feet north and south of Greenfield avenue, westerly to Twenty-
sixth avenue," such district embraced an area rectangular in
form extending north and south from the margins of Greenfield
avenue 150 feet, and east and west from First avenue to Twenty-
sixth avenue; the strip being of uniform width throughout and
embracing all lots or parts of lots located within it, regardless
of what streets such lots fronted upon.
3. Where in a *mandamus* action the parties submitted the issues for
trial to the court without a jury, the findings of the court in
favor of the relator are equivalent to a verdict, in the contem-
plation of sec. 3453, Stats. 1915, which provides that in case a
verdict shall be found for relator or if judgment be given for
him upon demurrer or by default he shall recover damages and
costs in like manner as he might have done in such action for
a false return.

4. Secs. 3451, 3453, 3456, Stats. 1915, do not create an absolute lia-
   bility of the respondent for damages in case a verdict shall be
   found for relator or if judgment be given for him upon demur-
   rer or default; nor does the relator's right in such case to re-
   cover damages rest within the sound discretion of the court.
   The liability must depend upon the facts of the case, including
   the nature and quality of the duty which the respondent failed
   to perform and of the rights of the relator which were breached·
   by such failure.
5. Where a building inspector, in refusing a permit for the erection
   of a public garage, acted honestly and in good faith upon a mis-
   taken view of the meaning of a city ordinance, and his return
   to an alternative writ of *mandamus* truthfully stated the facts,
   he was not liable in damages to the relator to whom he had
   denied said permit, such denial not being an invasion of the
   relator's private property rights.
6. As a general rule, officials acting in an honest exercise of their
   judgment in the discharge of *quasi*-judicial duties are not liable
   in damages to private persons for their mistakes and errors.

APPEALS from a judgment and an order of the circuit
court for Milwaukee county: W. J. TURNER, Circuit Judge.
*Affirmed.*

This is a *mandamus* action to compel the inspector of
buildings of the city of Milwaukee to issue to *Andrew J.
Bautz* a permit to erect a public garage on a certain lot in
that city.

The relator alleges that the lot in question is within the
district defined in the Milwaukee city ordinances as the
"business district" and that he purchased the lot with the in-
tention of building a public garage on it; that while negoti-
ating for the purchase of the property he caused inquiry to
be made at the office of the respondent, *Harper*, for the pur-
pose of ascertaining whether or not there was any provision
in the ordinances of the city that would prevent his erecting
such a garage on this lot, and that he was informed that there
was no ordinance of the city that would prevent this and that
the respondent as building inspector of the city had no ob-
jection to the granting of a permit for the erection of such a

garage upon this property. He further alleges that he purchased the property after such assurance and had plans and specifications drawn which complied with the provisions of the city ordinances; that he presented these, together with an application for a building permit, at the office of the respondent and that the respondent refused to issue such a permit, and that he tendered the amount of a permit fee to the city treasurer, but the tender was refused because not accompanied by a building permit.

In answer the respondent, as inspector of buildings for the city, denies that the property of the relator is within the district defined by the city ordinances as the "business district," that he had any knowledge that the relator purchased the lot after having made inquiries at the office of the respondent and received assurance that there was no objection to the erection of such a building, and that the plans and specifications of the relator comply with the provisions of the city ordinances. He claims that he cannot lawfully issue a building permit to the relator to erect the proposed garage or approve the plans and specifications therefor because the city ordinances prohibit the same.

The relator also asked for damages caused by the respondent's alleged refusal to issue the permit.

The court made the following findings in the case:

(1) That the respondent, *William D. Harper,* is building inspector of the city of Milwaukee and had qualified and was acting in this capacity at the times involved in this litigation, and that he has power and authority to issue building permits pursuant to the ordinances of the city.

(2) That the relator's property upon which he proposed to build the garage is located in block 48 in Clarke's subdivision in the Twenty-third ward of the city of Milwaukee, and that lots of this block upon which the proposed garage is located front the east side of Layton boulevard between Scott

street on the north and Greenfield avenue on the south as shown on the accompanying map:

(3) That all of the area on which the relator's proposed garage is located except the north ten-foot strip is located within the "business district" of the city as provided by the city ordinances, and that this ten-foot strip is a part of block 48 above described; that two thirds of the lots of this block fronting on Layton boulevard are not occupied by buildings devoted to residence purposes.

(4) That the city code of ordinances declares all parts of the city embraced within the specified limits to be "the business section," and that the term "business section" shall mean (a) that all buildings within this section or portion of the city being within the described boundaries may be occupied or maintained for any purpose whatsoever if conformable to the building ordinances, (b) providing, among other things, that no garage to be used in the automobile business shall be erected in a block where two thirds of the lots fronting on one street in any block *not within the business section* are occupied by buildings devoted to residence purposes; (c) that the following described part of the city is embraced in the "business section:" "Greenfield avenue.— Beginning at the intersection of First avenue to one hundred and fifty feet north and south of Greenfield avenue, westerly to Twenty-sixth avenue. . . ."

The court awarded a peremptory writ of *mandamus* commanding the respondent, as building inspector, to issue a building permit to relator for the erection of the proposed garage, and that he recover the sum of $118.88, costs of the action, from the respondent, and that the respondent approve the proposed plans and specifications for the garage as furnished by the relator. The court denied the relator's application upon motion to determine the amount of damages he sustained by the respondent's refusal to issue the relator the permit he applied for.

The respondent, *William D. Harper,* as building inspector of the city, appealed from the judgment awarding a peremptory writ of *mandamus* and the costs of action. The relator appealed from the order of the court denying his motion to have the court determine and award him recovery in the action of the amount of damages he sustained by the respondent's refusal to issue to the relator the building permit upon the relator's application therefor.

For the relator there was a brief by *Otjen & Otjen* and

*James T. Drought* of Milwaukee, and oral argument by *Mr. Henry H. Otjen* and *Mr. Drought.*

For the city of Milwaukee there was a brief by *Clifton Williams,* city attorney, and *Charles W. Babcock,* assistant city attorney, and oral argument by *Mr. Babcock.*

SIEBECKER, J.  Sub. (d) of sec. 474 of the code of ordinances of the city of Milwaukee provides: "Where two thirds of the lots fronting on one street in any block in the city of Milwaukee not within the business section are occupied by buildings devoted to residence purposes," then no garage shall be erected on any lot in such block on such street.  The trial court held that under the provision of this ordinance the building inspector is not justified in his refusal to grant the relator the permit applied for.  The evidence shows that there are twelve lots fronting on Layton boulevard on the east side of the block in question.  Six of them are occupied by dwellings and the rest are vacant except lot 12, which has a saloon building on it.  The court was of the opinion that the above subsection of the ordinances required that two thirds of all lots on this block fronting on Layton boulevard must be occupied by dwellings in order to inhibit the erection of a garage on any lot in such block.  This is the natural and ordinary meaning of the phraseology of the provision of the ordinance.  The language employed by the common council indicates with reasonable certainty that this regulation was intended to embrace all the lots of any one block on either side of the street, regardless of the fact that a part of such block may be embraced in the "business section." It is considered that the trial court properly held that the building inspector, under the facts and circumstances shown to exist in this block, is not, under the provision of this section of the ordinances, justified in refusing the relator the permit applied for.

It is contended on behalf of the building inspector that the

lots on which the proposed garage is to be located are not
within the "business section" as defined in the provision of
sec. 476 of the code of ordinances, which provides: "All
that part of the city of Milwaukee embraced within the fol-
lowing limits shall hereafter be known as 'the business sec-
tion.' . . ." Among the districts described is the following,
under the designation the South district: "Greenfield av-
enue.—Beginning at the intersection of First avenue to one
hundred and fifty feet north and south of Greenfield avenue, .
westerly to Twenty-sixth avenue." It is conceded that block
48 above described lies between Greenfield avenue and Scott
street, as shown on the foregoing plat. The terms of the pro-
vision prescribing the limits of such "business section" leave
no room for different interpretation. They definitely fix the
limits of the city embraced in the "business section" as an
area rectangular in form beginning at the intersection of
Greenfield and First avenues and extending north and south
from the margins of Greenfield avenue 150 feet and extend-
ing westerly to where Greenfield avenue intersects Twenty-
sixth avenue. The width of this strip is uniform throughout
the whole section and embraces whatever lots or parts of lots
may be located within it, regardless of the fact as to on what
avenue or street the lots within it may front. The trial
court's interpretation of this ordinance gives a natural and
ordinary meaning to the phraseology. employed by the com-
mon council in describing and limiting the boundaries of the
"business section" to the 150-foot area extending from the
margins of Greenfield avenue. Under this interpretation of
the ordinance the relator's lot is not located within a pro-
hibited district for the erection of a public garage, and he is
entitled to a permit from the city for its erection in his ap-
plication to the respondent as building inspector of the city,
upon compliance with the conditions of the city ordinances.
The building inspector does not now claim that the plans and
specifications presented by the relator do not meet the calls

of the city and the statutory regulations for the erection of the garage on the designated location, nor is it denied but that the relator has complied with all the conditions prescribed for making the application for a building permit for the garage on the lots in question. In the light of these facts, the only claim asserted by the building inspector to justify his refusal to grant relator the building permit applied for was that the city ordinances above referred to forbid the erection of the proposed garage on the lots designated in the application. Under the facts and circumstances of the case no grounds exist upon which the building inspector can exercise any judgment and discretion in the matter of refusing such permit other than the claim now made by him, namely, that no public garage may be built on the designated lots of the relator under the provisions of the city ordinances. This claim, as above indicated, is not sustained by the provisions of the city ordinances, and the court properly directed a peremptory writ of *mandamus* to issue commanding the respondent to grant such permit.

Upon determination by the court that relator was entitled to have the peremptory writ issue, he moved the court for a determination of the amount of his damages proximately caused him by the respondent's refusal to grant him such permit at the time of his application therefor. The court denied this motion upon the ground that a recovery of damages in cases of this nature rests within the sound discretion of the court, and that under the facts and circumstances of this case the relator is not in justice entitled to recover such damages from the respondent. The rights of the relator respecting the recovery of damages against respondent involve a consideration of provisions of the statutes embodied in ch. 148, Stats. 1915, and particularly the portion regulating the pleadings and proceedings involving the question of damages and the imposition of fines and imprisonment in *mandamus* cases.

Sec. 3451, Stats., provides:

"Whenever a return shall be made to any such writ [*mandamus*] the person prosecuting the same may demur or answer all or any of the material facts contained in the same return; and the like proceedings shall be had thereon for the determination thereof *as might have been had if the person prosecuting such writ had brought his action for a false return.*"

Sec. 3453, Stats., provides:

"In case a verdict shall be found for the person suing out such writ or if judgment be given for him upon demurrer or by default, *he shall recover damages and costs in like manner as he might have done in such action for a false return as aforesaid;* and a peremptory *mandamus* shall be granted to him without delay."

Sec. 3456, Stats., provides:

"Whenever a peremptory *mandamus* shall be directed to any public officer, body or board, commanding them to perform any public duty specially enjoined upon them by any provisions of law, if it shall appear to the court that such officer or any member of such body or board has, *without just excuse,* refused or neglected to perform the duty so enjoined *the court may impose a fine,* to be paid to the state treasurer, . . ." or sentence to imprisonment the party so commanded to perform the public duty so enjoined upon him.

These provisions of the statute are in effect the same as those embodied in ch. 125, R. S. 1849, and have been continued through the Revised Statutes of 1858, 1878, and 1898, with slight verbal changes and modification as to fines and imprisonments. The significance of the provision of secs. 3451 and 3453 above quoted is apparent by a reference to the law on the subject as it existed prior to this legislation. At the common law, prior to any legislation by parliament regulating the practice and pleading in *mandamus* proceedings, there were no pleadings after the return to the writ had been made. The return was taken as conclusive, and the court summarily proceeded to determine the questions presented upon the al-

ternative writ and the return, and judgment was rendered upon the facts stated in the return as absolute verity. In case the return was false in point of fact, then the relator was relegated to a subsequent action against respondent in an action on the case for a false return to the alternative *mandamus. Enfield v. Hills,* 2 Lev. 236; *People ex rel. Aspinwall v. Supervisors,* 28 N. Y. 112; *Johnson v. State,* 1 Ga. 271; *Dane v. Derby,* 54 Me. 95; *The King v. Mayor, etc.* 3 B. & A. 255.

Parliament, by statute 9 Anne, c. 20, provided that the return might be traversed in certain cases, thus permitting the relator to establish the falsity of the return and be awarded a peremptory *mandamus* and recover such damages as the law authorized in the former procedure by an action on the case for a false return. The provisions of the statute were by 1 William IV, c. 21, extended to all writs of *mandamus* except those specifically excluded.

"The effect of the statute was to assimilate proceedings in *mandamus* to those in ordinary personal actions, and although it did not abolish the common-law remedy by an action on the case for a false return, yet it rendered this remedy practically obsolete, by substituting in its stead a more expeditious form of procedure, by which complete relief was afforded in one and the same proceeding, without compelling the relator to resort to his collateral remedy by an action for a false return." High, Extr. Leg. Rem. (3d ed.) § 458.

The provisions of our statutes (ch. 148, Stats. 1915) prescribing the procedure in *mandamus* proceedings are modeled on these English statutes and authorize the relator "to demur or answer all or any of the material facts contained in the same return," and thereon the court is to determine the issue raised by the pleadings "as might have been had" if relator "had brought his action for a false return." The pleadings of the parties and the proceedings had in the court below show that the respondent's return was in all material facts in accord with the facts found by the court upon the trial of the

issues presented, but that respondent erred in the interpretation of the city ordinances defining the "business districts" of the city and as to what constitutes a residential block of lots wherein the erection of a "garage for the storage, repair, for hire, or for sale of automobiles" is forbidden.   As above indicated, the court made the findings of fact in the case and determined that relator is entitled to a peremptory writ of *mandamus* commanding respondent to issue the building permit applied for by him.   Nothing appears in the record nor is there any contention made but that the parties submitted the issues for trial to the court without a jury, and hence the findings of the court must stand as a determination equivalent to a verdict in the contemplation of the provisions of sec. 3453, Stats. 1915, which provide that if a verdict be found for relator or he recover a judgment upon demurrer or by default "he shall recover damages and costs in like manner as he might have done in such action for a false return as aforesaid."

The trial court held that the relator's right to recover damages rested within the discretion of the court.   This, we think, is an erroneous view of the law.   Such view bases the respondent's liability for damages to a relator on the same grounds the statutes make a public officer liable to the penalties prescribed in sec. 3456, Stats., for the failure to perform a public duty enjoined on him.   The provisions of secs. 3451 and 3453 regulating the subject of damages do not indicate such a purpose, but provide that the relator "shall recover damages and costs in like manner as he might have done in such action for a false return . . ."   The inquiry, therefore, remains, What damages is the relator entitled to recover had he assailed the return as false in a personal action against respondent?   The terms of the statutes do not create an absolute liability of the respondent for damages in the event a verdict shall be found for relator or if judgment be given him upon demurrer or default.   His liability must be de-

termined upon the facts and circumstances of the case for failure to perform the duty enjoined upon him in the light of the nature and quality of his duty and the nature of the rights of the relator here involved which it is claimed have been breached. The record presents no grounds for charging the respondent with a wilful or malicious disobedience of the law in refusing the permit and hence these characteristics of a default need not be considered. No substantial claim is presented that the return to the writ is false in fact, nor does the court adjudicate that the return was false. The plain inference is that the respondent as building inspector acted upon a mistaken view as to the meaning of the ordinances providing for the issuance of a permit to erect a garage on the lots in question. This duty imposed on him by ordinance was clearly of a *quasi*-judicial nature. It is the general rule that officials acting in an honest exercise of their judgment in the discharge of such duties are not liable in damages to private persons for their mistakes and errors. *Lowe v. Conroy,* 120 Wis. 151, 97 N. W. 942, and cases cited. The denial to relator of a building permit is not an invasion of his private property rights and hence does not bring him within the exception specified in the *Lowe Case* making *quasi*-judicial officers responsible in those cases of an invasion of private rights for which the law provides no redress other than in a private action for compensation for the loss sustained. The instant case, therefore, presents no grounds of legal or statutory liability for damages for an omission to perform a *quasi*-judicial duty, nor do the facts of the case establish the basis for an action for a false return to the writ of *mandamus* as recognized by the common law. *People ex rel. Walker v. Ahearn,* 139 App. Div. 88, 123 N. Y. Supp. 845; *State v. King,* 23 N. C. 22; *State ex rel. Alexander v. Ryan,* 2 Mo. App. 303; *People ex rel. Aspinwall v. Supervisors,* 28 N. Y. 112.

The judgment of the trial court denying relator damages

was properly awarded, although the court erroneously based it on grounds of judicial discretion. Upon the foregoing grounds it is considered that the relator is entitled to a peremptory writ commanding respondent to grant the building permit applied for. It seems plain that relator has a legal right to such permit and that he has no other remedy to enforce this right. *Neu v. Voege*, 96 Wis. 489, 71 N. W. 880; *State ex rel. Fourth Nat. Bank v. Johnson*, 103 Wis. 591, 79 N. W. 1081.

*By the Court.*—The judgment and order appealed from are affirmed. No costs are awarded to either party in this court. The appellant, *William D. Harper*, as building inspector, to pay the clerk's fees.