[No. 22880. *En Banc.* September 19, 1931.]

HAROLD H. STEWART, *doing business as Stewart Mailing List Company, Appellant,* v. CHARLES R. MAYBURY *et al., Respondents.*[1]

*R. V. Welts* and *James P. Neal,* for appellant.

*The Attorney General* and *Lester T. Parker, Assistant,* for respondent Charles Maybury.

*Eggerman & Rosling,* for respondent New York Indemnity Co.

BEELER, J.—The appellant brought this action to recover damages alleged to have been suffered by him because the respondent Maybury, as director of licenses of the state, denied him access to, and the privilege of making copies of, the motor vehicle license records in the office of the director. The respondent New

[1]Reported in 3 P. (2d) 138.

York Indemnity Company is the surety on the official bond of the respondent Maybury. Demurrers to the amended complaint having been sustained, and the appellant having elected to stand on the amended complaint, judgment of dismissal was entered and this appeal followed.

The amended complaint is long, and contains many conclusions of the pleader and many repetitions and some inconsistencies. The substance of it is given in the following synopsis, in which we italicize the more significant parts:

The appellant, since the year 1914, has been engaged in the mailing list business in this state, employing therein a capital investment of more than twenty-five thousand dollars. In the conduct of the business, it is necessary to copy data from public records, especially from the motor vehicle license records in the office of the director of licenses. The information obtainable from these license records during the first six months of each year, if obtained promptly, is more valuable than that obtainable during the rest of the year, because most of the licenses are issued during the first six months of the year.

In December, 1927, the appellant demanded of the respondent Maybury the right to inspect and take data from the records of licenses of motor vehicle registrants and licensees, and was arbitrarily denied the right, *though the appellant's business competitor was given full and free access to the records.* The appellant, in order to enforce his right to such access, applied to the superior court for Thurston county, early in the year 1928, for a writ of mandate against the respondent Maybury, and on February 16th of that year, a writ was granted by the superior court, by an order signed by one of the judges thereof, commanding the respondent Maybury to permit the appel-

502

lant to inspect and make copies of the motor vehicle license records.

The respondent Maybury "continued to refuse plaintiff access to said public records," so that on April 2, 1928, *upon the appellant's application for an order to show cause why respondent Maybury should not be punished for contempt, the superior court entered an order commanding the respondent Maybury to furnish the appellant*

"  . . .  *the list of the motor vehicle registrations now in and from time to time added in his office as such director of licenses, so that the said Stewart or a person under his direction can proceed without delay in copying the same, said records to be furnished in such manner, quantities, number and method that one person can be kept busy copying the same without the delay occasioned by constantly asking for such records.*"

The respondent Maybury refused to comply with this order, and *consequently the appellant was denied access to the records for the year 1928.*

When the time arrived for the issuance of motor vehicle licenses for the year 1929, the appellant

"  . . .  again endeavored to get access to said public records, *to compile data and lists for the 1929 business,* and in the months of December, 1928, and January, 1929, plaintiff endeavored to get access to said records *for this purpose;* but the defendant Charles Maybury, as director of licenses, continued to refuse to permit the plaintiff or any agents, servants or employees access to said records to copy the same and *refused to give and furnish any of said data so that he could expeditiously copy the same or parts thereof as the court had ordered,* and informed the plaintiff that he would not permit him to make copies of said records or have access thereto *for that purpose;* and that *thereby said defendant has effectively withheld said public records* and denied plaintiff any and

all opportunities to copy data therefrom for the full two years of 1928 and 1929.''

The only hearing in the superior court upon the question of the appellant's right to have access to the records was that of February 16, 1928, the subsequent hearings therein pertaining solely to the question whether the respondent Maybury was in contempt of court for failure to obey the order of that date.

On June 7, 1929, the appellant, conceiving that the order of February 16, 1928, was void because it was not supported by findings of fact and conclusions of law, caused findings and conclusions to be made and filed and had another order entered identical in its terms with the one of February 16, 1928.

No proceedings, other than the said mandamus proceeding and the contempt proceeding thereunder, have ever been brought, either to compel the respondent Maybury to give the appellant access to the records or to recover damages suffered by the appellant because of a withholding from him access to the records.

Because of the failure and refusal of the respondent Maybury to give the appellant access to the records, *and because the respondent Maybury gave to the appellant's business competitor complete access to the records,* the appellant's customers and business were transferred to his competitor and, as a result, the appellant was damaged through loss of profits between February 16, 1928, and December 1, 1929, in the sum of $12,736, and was further damaged through depreciation of the value of his motor vehicle list business in the sum of $13,500.

From the foregoing synopsis, it is clear that, as to the year 1928, the appellant's grievance is not that he did not have such access to the records as every citizen is entitled to, but that a business competitor

was accorded better facilities than he for taking copies quickly and economically.

As to the year 1929, the intendment of the pleading is not so immediately apparent, but, upon a careful consideration of it, the same conclusion will be reached. We have quoted substantially the entire allegation in respect of the denial of access to the records for the year 1929. Standing by itself, unrelated to what preceded it, the allegation might mean that the director had denied the appellant any access whatever to the records; but, read in connection with the antecedent allegations, it may reasonably be taken to mean that the appellant demanded and was denied the facilities for convenient and cheap copying that were accorded his competitor. If a pleading has two intendments, the pleading is no stronger than the weaker intendment makes it, just as an allegation in the alternative is no stronger than the weaker of the two allegations. *Price v. Gable,* 162 Wash. 275, 298 Pac. 444.

We take it, therefore, that, as to both of the years 1928 and 1929, the appellant complains that Maybury furnished to a business competitor of the appellant facilities for taking data from, or copies of, public records and denied the appellant the same or like facilities, but did not deny him such access to the records as any citizen is entitled to have. It hardly need be said that this did not give the appellant a right of action at law against the official complained of.

But, besides failing to show that the appellant has or ever had a cause of action for damages, the amended complaint discloses that he has heretofore employed the processes of the court in such a way as effectively to bar himself from enforcing the remedy he now seeks. When he brought the mandamus proceeding in the early part of 1928, he had suffered *some*

of the damages he now seeks to recover, and should have claimed them in that proceeding; and since the damages, if any, were continuing from the same cause, he should, upon a supplemental petition, have proved them when he took the order of February 16th of that year. That order was voidable upon direct attack. It was not directly attacked, or attacked at all, so far as the record in this court discloses; but, later, the appellant chose to treat the order as void, and abandoned it, by having another order entered on June 7, 1929, based upon findings of fact and conclusions of law which he then caused to be made. At that time, he should have asserted his claim by a supplemental petition for the continually accruing damages, if any, up to that date. But at no time did he claim damages in the mandamus proceeding, as he might have done and ought to have done if he intended ever to claim damages for the cause for which he resorted to mandamus. Rem. Comp. Stat., §§ 1019, 1024, 308; Rem. 1927 Sup., § 308-2 (2); *Achey v. Creech,* 21 Wash. 319, 58 Pac. 208; *Nolte v. Montgomery Home Telephone Co.,* 86 Kan. 770, 121 Pac. 1111; *Columbia Knickerbocker Trust Co. v. Finney,* 93 Kan. 302, 144 Pac. 222; *State ex rel. Golden Valley County v. District Court,* 75 Mont. 122, 242 Pac. 421.

After final judgment in a mandamus proceeding in which damages might have been litigated, there can be no recovery for such damages in an action brought subsequently for such purpose.

In the *Achey* case, *supra,* the sheriff of Chehalis county took into his possession and retained certain personal property under a writ of attachment. Thereafter, the owner by mandamus proceedings undertook to compel the sheriff to return the property to him as exempt. The property was declared exempt and the

sheriff was ordered to make return to the owner, which was done. Thereafter, the owner brought suit for damages against the sheriff which he claimed he had sustained by reason of the unlawful detention of the property by the sheriff. Passing on the question, we said:

"The demurrer should have been sustained, the complaint showing that mandamus proceedings had been resorted to to obtain the possession of the property described. The respondent elected to prosecute her rights in the statutory form of mandamus, that action was prosecuted to final judgment, and, when a party has a choice of remedies by mandamus or suit for damages, the adoption of one bars the right to invoke the other. Merrill, Mandamus, § 311; *Kendall v. Stokes,* 3 How. 87; *State v. Ryan,* 2 Mo. App. 303. In addition to these authorities, it seems to us that our statute decides this question without any doubt, for the statute specially provides in the chapter on mandamus (Laws 1895, p. 118, § 26) that, if judgment be given for the applicant, he may recover the damages which he has sustained, as found by the jury or as may be determined by the court or referee, and for such damages and costs an execution may issue. Having, then, the right to plead and recover damages in the mandamus proceeding, the law will presume that she demanded and received in that action all that she was entitled to, and the defendant will not be subjected to the defense of a multiplicity of suits, when all the subjects of the controversy could be decided in one action."

In *State ex rel. Golden Valley County v. District Court, supra,* the relator made no demand for damages in his application for a writ of mandate, nor during the course of the hearing, and the relator caused the judgment to be entered without making any claim for damages whatsoever. This judgment was entered in favor of the relator on December 22, 1924, and a per-

emptory writ of mandate issued forthwith. Subsequently, on February 6, 1925, the relator brought an action to recover damages and costs which he alleged he had sustained prior to the entry of the judgment in the original mandamus action. The Montana statute is identical to our statute (Rem. Comp. Stat., § 1024) except the word "referee" is pluralized. Passing on the question whether relator could recover costs and damages in his subsequent action, the Montana court said:

"While damages are allowable in such cases, they may not be recovered where the right thereto has neither been asserted nor proved. (Citing authorities.) It is therefore clear that the relator should have had the damages now claimed by him litigated and determined in the *mandamus* action; and not having done so, the court is now without jurisdiction to proceed in that action to determine them.

"In *Achey v. Creech*, 21 Wash. 319, 58 Pac. 208, the supreme court, construing the Washington statute (Laws of 1895, p. 118), identical with ours, held that as the statute gives an applicant for *mandamus* the right to recover in such a proceeding the damages thereby sustained, the law will presume that he demanded and received therein all that he was entitled to, and will not permit him to subject the defendant to a multiplicity of suits when all the subjects of controversy could and should have been decided in the one action."

As to the alleged damages that may have accrued after June 7, 1929, the appellant is barred by his election to rely upon the remedy by mandamus alone. *Achey v. Creech, supra*. At that time, he had presumably a perfectly valid order for a writ of mandate commanding the respondent Maybury to allow him to exercise all the rights he claimed. If he did not avail himself of the processes and powers of the court to en-

508

force those rights, it was his own fault; if he did, then he suffered no damages.

Judgment affirmed.

PARKER, MILLARD, and HOLCOMB, JJ., concur.

BEALS, J., concurs in the result.

TOLMAN, C. J. (dissenting)—The foregoing opinion expresses the views of a minority only of the court. It is filed and becomes effective as an order affirming the judgment only because the fifth judge concurs in the result. By so doing, the concurring judge thereby expresses his disagreement with the reasoning of the opinion, thus leaving it as the expression of the views of four judges only; and, as such, it declares no law, fails to become a precedent, and is binding upon no one. There being no majority opinion to combat, it would be useless and futile to take time and space to express my views, which, if expressed, would equally fail of having any binding force. It therefore seems sufficient to say that I concur neither in the reasoning of the opinion nor in the results reached by the majority of the court.

MAIN and MITCHELL, JJ., dissent.