Clare J. Hoyt, J.
Petitioner, the proprietor of a newspaper in the City of Yonkers, brings this proceeding under article 78 of the Civil Practice Act against the respondent Yonkers City Clerk to compel him to recognize petitioner’s paper, The Home News and Times, as an official paper of said city and to furnish petitioner with all advertising and notices required by law to be published in an official newspaper of said city for insertion and publication in petitioner’s newspaper. Petitioner also seeks a money judgment for compensation withheld by reason of the failure of respondent to supply items for publication after tho *603 purported termination of the designation of petitioner’s paper as an official newspaper.
Section 43 of the Second Class Cities Law applicable to Yonkers provides that at the organization meeting of the Common Council it shall designate not more than two newspapers in the city to be the official paper or papers. By a two-thirds vote the council may designate a single paper. Unless one paper is so designated, “ it [council] shall designate two official papers, of opposite political faith, and of which at least one shall be a daily newspaper, and each member shall be entitled to vote for but one paper, and the two papers having the highest number of votes shall be the official papers for two years and until a successor or successors shall be designated * # * In case an official paper shall refuse or fail to act or perform as such, the common council may in its discretion, as hereinbefore provided, designate a successor.”
Pursuant to this section and on January 2, 1962 the Herald Statesman, a paper of the Republican political faith, and petitioner’s newspaper, a paper of the Democratic political faith, were designated as the two official city papers.
On March 26, 1963 a resolution was adopted by the Yonkers Common Council by a vote of 7 to 6 terminating the designation of petitioner’s The Home News and Times and designating the Yonkers Record as an official newspaper of the city as successor to and in place and stead of petitioner’s newspaper. This resolution after reciting section 43 of the Second Class Cities Law and the designation of petitioner’s newspaper as the Democratic paper and the designation of the Republican newspaper at the organization meeting recited “Whereas, the Home News and Times has failed to act and perform as such and has shown by its repeated expressions over a period of more than two months that it is no longer of the Democratic political faith ”.
Petitioner, in addition to alleging the foregoing, claims that the termination of the designation of petitioner’s paper as an official newspaper was void and of no effect and that until a successor is validly appointed it remains an official newspaper of the City of Yonkers. The respondent alleges that the appointment of petitioner’s newspaper as an official newspaper was subject to termination at the discretion of the council in case “ said official paper should at any time during said two years refuse or fail to act or perform as such official paper of the Democratic political faith and subject to the right of the Common Council at any time during said two year period in its discretion to designate a successor official paper ’ ’.
*604 Respondent as a .-separate defense alleges that petitioner omitted from publication a portion of a notice for a hearing on redistricting of ward boundaries, that it failed 1 ‘ by mistake and error ” to publish notices of four other hearings and that it has published editorials and articles attacking the administration of the city generally and in particular the efforts of the Democratic majority to change the ward boundaries.
Petitioner by his reply avers that the omission of a portion of the publication was trivial and that the failure to publish the other notices resulted from the failure of respondent to furnish petitioner with the materials for publication.
The pleadings thus raise two issues: can the designation of petitioner’s newspaper be terminated by reason of its alleged failure to adhere to the political principles it espoused at the time of its designation, and can the designation be terminated because of the alleged typographical errors or omissions of petitioner’s newspaper.
There can be no serious questions that the Common Council, by virtue of section 43 of the Second Class Cities Law, permitting it to designate a successor in its discretion when an officially designated paper refuses or fails to act or perform as such, has the power to terminate an appointment and designate a successor. The question is: What constitutes a failure or refusal to perform and act as such?
The designation of a paper is an administrative act (Matter of Heafy v. McCabe, 247 App. Div. 277, affd. 270 N. Y. 616). The power to designate a new appointee is not questioned where the original appointment was not completed. Thus, in Matter of Grose-Peters, Inc. v. Kinns (278 App. Div. 492), the Republican members of the Board of Supervisors were permitted to revoke their original designation and designate a different newspaper when such revocation was done before the Clerk sent the designation to the Secretary of State. In 1911 Atty. Gen. 32, 48 N. Y. St. Dept. Rep. 613, and 6 N. Y. St. Dept. Rep. 443, the converse of the proposition is found. Once the designation has been made and filed, there can be no revocation. (People v. Supervisors of Monroe County (60 Hun 328, 331 [5th Dept.]) is in accord: “ Very little need be said upon the subject of the power of the Democratic members of the board to change their designation of a newspaper when once legally made. In any judgment, they had no such power, where the certificate making the same had once been filed with the clerk of the board, and had been adopted by resolution of the board, as was done in this case ”.
These cases, however, are not controlling since they did not involve statutes giving the appointing body the power to desig *605 nate successors to the original appointee, and did not involve the appointment of successor papers after the original designee had actually served as an official newspaper.
One finds frequent statements that the courts should not pass upon the political consideration involved in an appointment or designation of a newspaper.
Thus, in People v. Supervisors of Monroe County (supra, p. 332), the court states: “ The question whether or not a given newspaper so represents the political faith of the persons designating it for the purpose of publishing the session laws belongs rather to the persons themselves than to the court. Indeed, such is the peculiarity of the question, that it is doubtful whether any court would undertake to review the determination of the members of the board of supervisors when once fairly and intelligently made upon that question.”
In Matter of Relihan v. Brink (285 App. Div. 729) the court, dismissing a petition of a county chairman who sought to annul the designation of a newspaper by his party’s representative on the Board of Supervisors on the ground the paper designated was not representative of the party, said (pp. 730-731):
“ If a newspaper has given no support to the principles of a party and does not bring itself at all within the standards of the statute, it may be held by the court as a matter of law not qualified for designation * * *.
‘ ‘ But in a debatable field of qualification and in areas where reasonable men might differ, a court will not undertake to do more perfectly an act which a statute delegates to a public officer both the authority to do and the discretion how best to do it. * * e
“ The duty of making the selection is not vested in the court, but in the elected officials named in the statute and in the absence of an abuse of the power, which in the end means an act so unreasonable no sensible man could reach the same result, a court will not interfere.”
These cases holding that a court should not review the determination, if reasonably made, that a newspaper qualifies as an advocate or supporter of the principles of the party, do not determine the issue here, namely the power to terminate the designation for a change in or lack of such advocacy or support.
The unwillingness of the courts to review on political grounds the propriety of the designation, once made and acted upon, results from a lack of objective standards for determining partisan political adherence and advocacy. The statute directs that the appointment be made upon political considerations and the courts refrain from questioning the choice, made upon pol *606 itical grounds, at the time of designation. But once the necessary appointment is made, and the appointing body has been able to exercise its political prerogative therein, it should not terminate the appointment solely on political grounds. If a newspaper were considered to have refused or failed to act or perform on political grounds, what standard should apply? What is to constitute a failure to support the principles of the party? What must a paper do to maintain its advocacy and adherence to the political party whose representatives designated it? Surely, a single criticism made or a doubt expressed upon a program or a candidate of the party does not constitute a refusal or failure to act or perform as such. If so, officially designated newspapers would act at their peril whenever they questioned the propriety or the wisdom of the acts of the members of the council who appointed them. Newspapers, even those officially designated, should not be so proscribed.
The other act complained of by the respondent, the improper publication of a notice and the failure to publish other notices may constitute failure or refusal to act or perform. Only a hearing can determine if these alleged typographical errors or deficiencies amounted to a failure or refusal to act or perform as an official newspaper and justified termination of the appointment. Since petitioner denies responsibility for these omissions, this issue may only be resolved upon a hearing which is thus directed (Civ. Prac. Act, § 1295).
The petitioner, if eventually successful in this proceeding, is not entitled in this proceeding to any compensation for moneys lost or not paid by failure of respondent to furnish notices and materials for publication.