383 A.2d 582.

TIMOTHY GORMALLY *vs.* JOSEPH E. CANNON, M.D. *et al.*

MARCH 8, 1978.

PRESENT: PAOLINO, JOSLIN, KELLEHER AND DORIS, JJ.

PAOLINO, J.   On January 19, 1976, the plaintiff brought this civil action for a writ of mandamus to compel the defendant officials of the Rhode Island Department of Health (the department)[1] to make available to him certain records of the department. In a letter dated November 11, 1975, the plaintiff had written to Dr. Harry E. Darrah requesting an appointment to review the results of the department's unannounced bimonthly inspections of three Rhode Island nursing homes. Under the provisions of G.L. 1956 (1968 Reenactment) §23-17.1-13 the results of such inspections "shall be open to public inspection."[2] The correspondence in evidence indicates that the plaintiff had first sought access to these records in August 1974 and that his requests had been consistently refused until after he brought this action.

On February 2, 1976, defendants filed an answer in

---

[1]The defendant Dr. Joseph E. Cannon is the director of the department and Dr. Harry E. Darrah is the department's Chief of the Division of Licensure and Construction.

[2]General Laws 1956 (1968 Reenactment) §23-17.1-13 reads in pertinent part as follows:

"Inspections. — (A)   The licensing agency shall make or cause to be made unannounced inspections and investigations at least once every two (2) months of extended care facilities, skilled nursing homes, intermediate care facilities, personal care homes, and nursing homes. The inspections shall be conducted both as to profit and non-profit facilities and the results shall be open to public inspection, however, requirements as to the fire safety code will be deferred in accordance with §23-28.1-7 of the general laws of the state of Rhode Island."

which they alleged that plaintiff had been advised that he could examine the results of the unannounced bimonthly inspection reports mandated by §23-17.1-13 and therefore requested that the complaint be dismissed as moot.

The cause was assigned for hearing before a justice of the Superior Court on February 24, 1976. Having been informed of defendants' compliance with plaintiff's request, he conducted the hearing as if defendants had orally moved to dismiss the complaint on the ground of mootness, presumably pursuant to Super. R. Civ. P. 41(b)(2). The plaintiff objected to the dismissal absent some provision for his damages and costs. Specifically, plaintiff requested reimbursement for duplicating expenses and travel costs. He also requested nominal damages.[3] The trial justice noted that plaintiff was entitled to filing fees and cost of service but that he could not award plaintiff cost of postage and travel. In addition, he denied plaintiff's request for nominal damages, saying:

> "No, you didn't pray for it, so you can't have it. I can't go beyond the relief that you sought. This case is a case for mandamus, which means the Court will order somebody to do something, but this isn't a suit for damage because you've been wronged."

In reply to plaintiff's assertion that he had been wronged and to his request to address himself to the question of damages, the trial justice said:

> "I'm not going to give you the time. I appreciate your position, but you've come into this Court seeking mandamus, and you don't need it now because they have agreed to let you inspect the records. You didn't seek any other relief besides the catchall and I'm not going to go beyond the pleadings. I'll treat it as an oral motion of the defendant here to dismiss the case on the

---

[3]The plaintiff did not pray for damages in his complaint, but did pray for "such other further relief as, to [the court] may seem necessary."

ground that it has become moot and grant the motion conditioned upon payment of costs to the plaintiff."

The trial justice stated that he was referring to the filing fees and the sheriff's costs.

On March 3, 1976, plaintiff filed a notice of appeal "from the judgment of the Superior Court entered on February 24, 1976." Thus, this notice of appeal was filed after the rendition of the decision by the trial justice on February 24, 1976, but prior to the entry of judgment on March 16, 1976. However, in the circumstances of this case,[4] we shall overlook this deficiency and consider that what should have been done had in fact been done. *See Naughton v. Goodman*, 117 R.I. 113, 114 n.1, 363 A.2d 1345, 1346 n.1 (1976); *Lamarche v. Lamarche*, 108 R.I. 213, 215-16, 273 A.2d 860, 861 (1971).

On March 8, 1976, defendants reimbursed plaintiff for his sheriff's costs ($10.30) and filing fees ($10.00) in accordance with the trial justice's decision.

The judgment entered on March 16, 1976 provided that plaintiff's motion for costs of $20.30 was granted, that his motion for damages was denied, and that defendants' motion to dismiss plaintiff's request for mandamus was granted conditioned upon payment to plaintiff of the $20.30.

In urging error plaintiff contends that he had a legal right to view the requested records and that he was entitled to at least nominal damages for the infringment of that right. Therefore, he argues, the trial justice erred in preventing him from introducing evidence concerning his expenses incurred in vindication of that legal right and it was an abuse of discretion to deny him those damages.

The defendants, on the contrary, argue that plaintiff is precluded from recovering damages because of his failure to

---

[4]The plaintiff, not an attorney, acted pro se and presumably was not versed in procedural rules.

demand them in his pleadings and secondly, even if plaintiff's demand for damages is timely, damages are not recoverable in a civil action seeking mandamus.

We consider initially whether plaintiff's failure to demand damages in his complaint precluded consideration of that issue during the hearing in the Superior Court. If plaintiff had followed proper procedure he would have moved pursuant to Super. R. Civ. P. 15(a) to amend the pleadings to include a demand for damages. For the purposes of this case we shall treat plaintiff's request for damages in the Superior Court as an oral motion to amend the pleadings pursuant to Rule 15(a).[5] We have held that a trial justice abuses his discretion in denying such a motion where there is "no compelling reason" for doing so, *Ricard* v. *John Hancock Mutual Life Insurance Co.*, 113 R.I. 528, 541, 324 A.2d 671, 677 (1974), or where there is no suggestion in the record that a defendant would have been prejudiced by a granting of the motion. *Wilkinson* v. *Vesey*, 110 R.I. 606, 633-34, 295 A.2d 676, 692 (1972).

In the case at bar the trial justice refused to consider plaintiff's evidence concerning his damages because plaintiff "didn't pray for it." There is nothing in the record indicating that defendants would have been prejudiced by an amendment to the pleading, nor is there any other compelling reason for such denial. In the circumstances, if in fact damages are recoverable in an action for mandamus, the denial of plaintiff's motion to amend his complaint to include a demand for damages would constitute an abuse of discretion.

Thus, we address ourselves to the question of whether damages are recoverable in a civil action for mandamus. Jurisdiction to issue a writ of mandamus is conferred upon

---

[5]Super. R. Civ. P. 15(a) states in part that after a response has been served, pleadings may be amended "by leave of court" and that "leave shall be freely given when justice so requires."

the Superior Court by G.L. 1956 (1969 Reenactment) §8-2-16, and Super. R. Civ. P. 81(d) which provides that "[a]ctions to obtain relief by writ of mandamus shall be according to [the Superior Court Rules of Civil Procedure]." In *McCoy* v. *Nolan ex rel. Providence Journal Co.*, 74 R.I. 464, 467-68, 62 A.2d 330, 333 (1948), decided prior to the adoption of the Superior Court Rules of Civil Proceedure, this court held that both the legal principles and the procedure relating to mandamus are governed by the rules of the common law. Even though the procedure of such actions is now controlled in the Superior Court by the Rules of Civil Procedure, the legal sufficiency of a complaint seeking mandamus is still tested by the same substantive standards which have heretofore prevailed. *Demers* v. *Shehab*, 101 R.I. 417, 420, 224 A.2d 380, 381-82 (1966). It is generally well established that a writ of mandamus will issue only where the petitioners have a clear legal right to have the act done which is sought by the writ; and where the respondents have a ministerial, legal duty to perform such act without discretion to refuse; and where the petitioners have no plain and adequate remedy at law. It is not generally used to establish such a right and is usually denied where such an alleged right is either uncertain or doubtful. *Demers* v. *Adamson*, 102 R.I. 453, 456, 231 A.2d 484, 485 (1967); *Aniello* v. *Marcello*, 91 R.I. 198, 202-03, 162 A.2d 270, 272 (1960). Thus, the Superior Court Rules of Civil Procedure have not altered the substantive nature of the writ of mandamus in this state — such actions are still controlled by common law rules.

The question we must determine is whether damages were available in mandamus actions at common law. In *State ex rel. Bautz* v. *Harper*, 166 Wis. 303, 165 N.W. 281 (1917), the court reviewed the common law principles governing damages in mandamus proceedings. It said:

"At the common law, prior to any legislation by parliament regulating the practice and pleading in *man-*

*damus* proceedings, there were no pleadings after the return to the writ had been made. The return was taken as conclusive, and the court summarily proceeded to determine the questions presented upon the alternative writ and the return, and judgment was rendered upon the facts stated in the return as absolute verity. In case the return was false in point of fact, then the relator was relegated to a subsequent action against respondent in an action on the case for a false return to the alternative *mandamus*. [Citations omitted.]

"Parliament, by statute 9 Ann. c.20,[6] provided that the return might be traversed in certain cases, thus permitting the relator to establish the falsity of the return and be awarded a peremptory *mandamus* and recover such damages as the law authorized in the former procedure by an action on the case for a false return. The provisions of the statute were by 1 William IV, c. 21,[7] extended to all writs of *mandamus* except those specifically excluded.

"The effect of the statute was to assimilate proceedings in *mandamus* to those in ordinary personal actions, and although it did not abolish the common-law remedy by an action on the case for a false return, yet it rendered this remedy practically obsolete, by substituting in its stead a more expeditious form of procedure, by which complete relief was afforded in one and the same proceeding, without compelling the relator to resort to his collateral remedy by an action for a false return." *Id.* at 311-12, 165 N.W. at 285. *See* Annot., 73 A.L.R.2d 903, 906 (1960); *R.v. Fall*, 1 Q.B. 653, 13 L.J.Q.B. (n.s.) 187 (1842).

---

[6]Municipal Offices Act (1710), 9 Ann. c. 20. (Note that 1 *Chronological Table and Index of the Statutes* at 83 (1935 ed.) designates the above statute as 9 Ann. c. 25).

[7]Prohibition and Mandamus Act (1831), 1 Will IV, c. 21.

With respect to incorporating early English statutes into the common law of Rhode Island, G.L. 1956 (1970 Reenactment) §43-3-1 provides that

> "[i]n all cases in which provision is not made herein, such English statutes, introduced before the Declaration of Independence, which have continued to be practiced under as in force in this state, shall be deemed and taken as a part of the common law thereof, and remain in force until otherwise specially provided."

Thus even assuming that the provisions of the Municipal Offices Act (1710), 9 Ann. c. 20 have "continued to be practiced under as in force in this state," a petitioner may only be awarded damages in mandamus proceedings in those instances where he or she would have been entitled to them in a civil action for a false return. *See* 55 C.J.S. *Mandamus* §283 at 520 (1948). Since there is no claim in this case that defendants' answer was false, there can be no award of damages.

Apparently, as a result of the foregoing common law principles, the general rule has been adopted that in absence of a statute no damages are recoverable in a proceeding in mandamus. 55 C.J.S. *Mandamus* §342 at 604 (1948); *see Martinelli* v. *City Clerk*, 39 Misc. 2d 602, 606, 241 N.Y.S.2d 727, 732 (Sup. Ct., Westchester Cty. 1963); *Frost* v. *Trustees of California State University & Colleges*, 46 Cal. App. 3d 225, 120 Cal. Rptr. 1 (1975); *Venditto* v. *Auletta*, 31 Conn. Supp. 145, 325 A.2d 458 (C.P., New Haven Cty. 1974). For examples of jurisdictions which have enacted statutes authorizing damages in mandamus actions see *Gulbranson* v. *City of Sparks*, 89 Nev. 93, 506 P.2d 1264 (1973); *Wyoming Sand & Stone Co.* v. *Department of Revenue*, 24 Pa. Commw. Ct. 366, 355 A.2d 860 (1976).

Several statutes found in the Rhode Island General Laws authorize the use of the remedy of mandamus[8] but not one mentions specifically that damages are recoverable. Since there is no Rhode Island statute authorizing the award of damages in the instant civil action for mandamus, we hold that the common law rule applies and that the plaintiff was not entitled to damages.

For the reasons stated the plaintiff's appeal is denied and dismissed, and the judgment appealed from is affirmed.

Mr. Chief Justice Bevilacqua did not participate.

*Timothy Gormally,* pro se, plaintiff.

*Anthony S. Del Giudice,* Chief Counsel, Division of Legal Services, Department of Health, for defendants.

---

[8]The following parties are authorized by statute to seek mandamus: obligee of community redevelopment agency, G.L. 1956 (1970 Reenactment) §45-33-12; holder of bonds of state public buildings authority, G.L. 1956 (1977 Reenactment) §37-14-11; person aggrieved by failure of insurance commissioner to make certain determinations, G.L. 1956 (1968 Reenactment) §27-35-12; person seeking to enforce §39-2-9 requiring common carriers to provide uniform services and rates, §39-2-10.