**OPERATION CLEAN GOVERNMENT**

v.

**RHODE ISLAND COMMISSION
ON JUDICIAL TENURE
AND DISCIPLINE.**

No. 99–304–M.P.

Supreme Court of Rhode Island.

Nov. 19, 1999.

Arlene M. Violet, E. Providence, Robert Senville, Rumford, for plaintiff.

J. Renn Olenn, Warwick, John A. MacFayden, III, Providence, for defendant.

Present WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This case comes before us on a petition filed by Operation Clean Government (OCG) for the issuance of a writ of mandamus or certiorari to review decisions of the Rhode Island Commission on Judicial Tenure and Discipline (commission) that dismissed charges of misconduct filed against four judges of the Administrative Adjudication Court (AAC) and issued a private reprimand to the Chief Judge of that court. This complaint was filed by Arlene Violet (Ms. Violet), a member of the bar of this state who also represents OCG. Her complaint was based entirely upon a series of articles set forth in the Providence Journal relating to the AAC, its judges, and its staff. Another complaint against the Chief Judge was filed by Robert Arruda (Mr. Arruda) on behalf of OCG.

On December 22, 1998, the chairperson of the commission wrote to Ms. Violet, informing her that the commission had investigated her complaint against four judges of the AAC and determined that insufficient evidence existed to justify disciplinary action under the canons of judicial conduct. Subsequently on May 11, 1999, the commission informed Mr. Arruda

that a private reprimand had been issued to the Chief Judge of the AAC, who had earlier retired from his position.

A private reprimand is subject to statutory review by this Court only if the judge who receives it seeks a hearing before the full commission and, if aggrieved by the result of that hearing, appeals to this Court. G.L.1956 §§ 8–16–4(d) & 8–16–6. In the present case the Chief Judge of the AAC accepted the reprimand and did not seek a hearing before the full commission.

In the event that the commission dismisses charges against a judge or judges, no appeal to this Court is provided by chapter 16 of title 8 of the General Laws. Moreover, all proceedings before the commission based upon a complaint of judicial misconduct are declared by statute to be confidential unless and until a preliminary investigation discloses that a charge of judicial unfitness is supported by substantial evidence. Section 8–16–4(c). The statute also provides that all proceedings relating to a private reprimand shall be kept confidential. Section 8–16–13.

It is undisputed by OCG and by the commission that the statute provides for no appeal of a dismissal of a complaint against a judge or of a private reprimand that is accepted by a judge. It is the position of OCG that this Court may review the determination of any tribunal under its constitutional authority set forth in article 10, section 2, of the Rhode Island Constitution and pursuant to Article I, Rule 13, of the Supreme Court Rules of Appellate Procedure, which provides for the issuance of extraordinary remedies, including certiorari.

Before proceeding to the merits of the petition for issuance of writs of mandamus and/or certiorari, we must consider two preliminary matters that have been presented to this Court by the parties. The commission has moved to file a schedule of the commission's activities under seal. This motion indicates that the outline of activities of the commission contains no substantive information but only a list of the steps taken by the commission to investigate the complaint concerning the various judges of the AAC. The OCG has requested that this Court receive "in evidence" a letter written by the Chief Justice of this Court to Mr. Arruda, chairman of OCG, dated May 17, 1999.

■ Regarding the schedule of activities of the commission, the Court declines to consider the schedule that has been submitted under seal. The Court accepts the representation of counsel for the commission that the commission conducted an investigation of the complaints filed by Ms. Violet and Mr. Arruda over a significant period. In light of the confidentiality that is mandated by statute, § 8–16–13, until a proceeding becomes the subject of testimony at a public hearing, the Court declines to peruse a schedule of the commission's activities.

■ In respect to the letter of the Chief Justice, this Court is obviously aware of the letter written to Mr. Arruda, since a copy of the letter was sent to all the justices of this Court as well as to all other interested parties. The letter does nothing other than to give some basic, primary instruction to Mr. Arruda concerning the means by which the jurisdiction of this Court may be invoked. The letter points out that sending the Chief Justice a copy of a press release does not comply with the requirements of the Rules of Appellate Procedure. The letter refers to Rule 13 of this Court's Rules of Appellate Procedure but does not indicate in any way an opinion concerning whether a petition filed pursuant to that rule would be granted or whether it would have any merit in the context of review of the commission's investigatory activities. Consequently, the letter, though well known to the Court, is of no significance in these proceedings and could have no bearing on the decision of the Court to grant or withhold the extraordinary relief claimed by OCG. It therefore cannot be considered as "evidence" in support of OCG's position.

The OCG and the commission do not dispute the plenary jurisdiction of this Court to review decisions rendered by both judicial and administrative tribunals even in circumstances wherein no statutory appeal is provided. The propriety of exercising such plenary jurisdiction is the subject of sharp disagreement between these parties.

In 1974 the commission was established by an act of the General Assembly, P.L. 1974, ch. 136, § 1 (chapter 16 of title 8), in order to investigate and adjudicate claims that might be filed against members of the judiciary. It consists of fourteen members, three of whom are appointed by the Governor with the advice and consent of the Senate, none of whom need be attorneys; three of whom are selected from a list of attorneys provided by the Rhode Island Bar Association and appointed by the Governor with the advice and consent of the Senate; three of whom shall be members of the General Assembly, two to be appointed by the Speaker of the House of Representatives, one of whom shall be from the minority party and one to be appointed by the Majority Leader of the Senate; four of whom shall be members of the Judiciary who are appointed by the Supreme Court, one each from the Superior, the Family, and the District Courts, and one at-large member from any Court, who shall be chairperson. The commission must also include one judge of the Workers' Compensation Court who is appointed by the Chief Justice of the Supreme Court. See § 8–16–1.

The duties of the commission are set forth in detail in chapter 16 of title 8, and its investigative responsibility is described by § 8–16–4. In substance this section requires that the commission, upon receipt of a verified complaint from any person, not unfounded or frivolous, alleging that a judge of any court "is guilty of a violation of the canons of judicial ethics, or of willful or persistent failure to perform his or her duties, disabling addiction to alcoholic beverages, drugs, or narcotics, or conduct that brings the judicial office into serious disrepute, or that such a judge has a physical or mental disability that seriously interferes and will continue to interfere with the performance of his or her duties, shall make a preliminary investigation to determine *whether formal proceedings shall be instituted and a hearing held.* The commission may, on its own initiative, make a preliminary investigation, without receiving a verified statement, to determine whether formal proceedings shall be instituted and a public hearing held." Section 8–16–4(b). (Emphasis added.)

In the event that the commission in its preliminary investigation determines that a charge of judicial misconduct or unfitness is supported by substantial evidence, it shall direct that a public hearing be held. At that point the judge shall be notified of the investigation, the nature of the charge, and the time and the place set for a hearing. The judge shall have the right to counsel and to confront the witnesses against him or her and shall be afforded a reasonable opportunity to present such matters in defense as he or she may choose. Within twenty days after the notice has been served upon him or her, the judge shall file a written answer to the charges. See § 8–16–4(c).

The statute also provides for the issuance of a private reprimand that may include confidential suggestions and recommendations with respect to the judge. The private reprimand and all evidence and proceedings relating thereto shall be kept confidential. See § 8–16–4(d).

On completion of the hearings, the commission may dismiss the case on the ground of insufficiency of proof or may recommend to the Supreme Court "the censure, suspension, immediate temporary suspension, reprimand, retirement, or removal from office of the judge under investigation ***." Section 8–16–4(e). If any recommendation other than that of a private reprimand is issued, the Supreme Court shall take whatever steps are necessary to review the commission's proceed-

ings that have led to such recommendation and may affirm, modify, or reject the recommendation of the commission either on its own motion or upon petition of a judge who has been adversely affected by such recommendation. *See* § 8–16–6.

■ This summary of the statute reveals that the Legislature has carefully crafted a method of investigating and adjudicating complaints against members of the judiciary by a body specifically charged with the responsibility of such investigation and adjudication. The statute seeks to create a careful balance between the right of the public to know when substantial evidence to support a complaint has been found through the investigatory process of the commission and the right of the judge to confidentiality when substantial evidence of misconduct has not been disclosed by the commission's investigatory proceedings. The Supreme Court's intervention is not provided for in the statute save when the commission recommends to the Court that it should impose serious disciplinary sanctions.

The commission's functions combine investigation, prosecution, and adjudication. Adjudication resulting in significant disciplinary action may be implemented by this Court upon the recommendation of the commission. The OCG now contends that when the commission determines that no public hearing is required, that a complaint is without merit, or that a private reprimand is sufficient, this Court should at the request or petition of an unofficial body or, indeed any citizen, issue a discretionary writ of mandamus or certiorari to review those determinations.

Since its formation in 1974, the commission has investigated many allegations of judicial misconduct and in numerous instances has recommended to this Court that disciplinary action be taken. This Court has no reason to believe that the commission has abdicated its responsibilities or that it failed to investigate the complaints filed by Ms. Violet and Mr. Arruda. Indeed, we have every indication

from the commission's response that it did conduct an investigation over a period extending from the date of the complaint until the date of its reply to Ms. Violet on December 22, 1998, and further until its reply in respect to the private reprimand in May 1999. The OCG has given us no reason to doubt the integrity, the probity, or the dedication of the members of the commission. Certainly the chairperson and all members of the commission are deserving of the highest presumption of regularity in the performance of their duties.

In opposition to this strong presumption as well as to the high reputation of the members of the commission both judicial and otherwise, OCG presents us with a series of allegations contained in articles published in a newspaper. The content of such articles would not be admissible as evidence in any court proceedings. Neither Mr. Arruda nor Ms. Violet, who filed the complaints, had any personal knowledge of misconduct on the part of any judge of the AAC.

■ Some reference is made in the petition to accusations contained in an audit report conducted by KPMG Peat Marwick (Peat Marwick), an accounting firm engaged by the state to audit the records of the AAC. First, the petition states that Peat Marwick was not asked to perform an examination for fraud. This is a misstatement of fact. On page 7 of the audit report is a statement that "[o]ur work included procedures aimed at assessing the risk that fraud or other inappropriate activities could have occurred at AAC." Further, on page 29, the report states that a certified fraud examiner and an associate certified fraud examiner were part of the team assembled for the conduct of the audit. In effect the auditors found no evidence that fraud had occurred. However, the report indicates that because of the ineffectiveness of internal controls, the auditors could give no assurance that fraud did not occur. Such a statement could

scarcely be construed as an accusation of fraud or misconduct on the part of the judges of the AAC. It did disclose that record keeping and data entry were not carried out with a proper degree of efficiency or reliability.

 Consequently OCG asks this Court to review investigative procedures conducted by the commission in response to complaints made by Ms. Violet in February 1998, and at some later time by Mr. Arruda as an officer of OCG until May 1999, when a private reprimand was issued to the former Chief Judge. The investigation of four other judges apparently terminated on or before December 22, 1998.

In our opinion the presentation by OCG is wholly inadequate to justify our issuance of a prerogative writ and to undertake review of the investigative procedures and deliberations of the commission. As pointed out in the response of the commission, a common-law writ of mandamus will issue only in order to require the performance of a ministerial duty not involving the exercise of discretion at the request of a party who has a clear legal right to demand its performance. *Gormally v. Cannon,* 119 R.I. 771, 776, 383 A.2d 582, 585 (1978); *Brant v. McSoley,* 106 R.I. 385, 386, 260 A.2d 443, 444 (1970). In light of our prior cases in respect to mandamus, the request for issuance of such a writ borders upon the frivolous. The OCG has no legal right to demand that the commission perform an investigation in any particular manner. It is also obvious that the commission has wide discretion in determining whether substantial evidence of misconduct exists after it has conducted such an investigation.

In respect to certiorari OCG has established no standing based upon an injury in fact as a condition precedent for seeking extraordinary relief from this Court. *Pontbriand v. Sundlun,* 699 A.2d 856, 862 (R.I.1997); *Blackstone Valley Chamber of Commerce v. Public Utilities Commission,* 452 A.2d 931, 933 (R.I.1982); *Rhode Island Ophthalmological Society v. Cannon,* 113 R.I. 16, 22, 317 A.2d 124, 128 (1974). Such a minimum requirement of standing is essential even in cases that are brought allegedly to protect the public interest. *Retirement Board of the Employees Retirement System of Providence v. Cianci,* 722 A.2d 1196, 1198 (R.I.1999).

After carefully considering the petition for certiorari, the response to said petition, and the supporting materials provided by OCG, we are of the opinion that its request for the issuance of an extraordinary writ is without merit.

Consequently the petition for issuance of a writ of mandamus and/or certiorari is hereby denied.