DECISION
This matter comes before this Court on cross-motions for summary judgment by Martel Investment Group, LLC ("Martel") and the Town of Richmond ("Town"). Martel seeks a writ of mandamus requiring the Town to perform a development plan review of its proposal to change the use of a structure from restaurant to retail, as well as a declaratory judgment that it has acquired certain vested rights. Martel filed its Complaint with this Court on May 3, 2006. Jurisdiction is pursuant to G.L. 1956 §§ 8-2-16 and 9-30-1.
 Facts and Travel
Martel owns a 3.27 acre parcel of real estate located at 1210 Main Street in Richmond, Rhode Island (the "property"). The property contains a single building and is within a general business zoning district. According to the Town of Richmond Zoning Ordinance (the "Ordinance") § 18.12.020(E), the general business district "is established to provide areas for commercial uses that depend on greater volumes of vehicular traffic and highway related uses. Typical uses include those which offer accommodations and services to motorists, specialized retail outlets and uses that are more community oriented than those permitted in the neighborhood business district." *Page 2 
Prior to Martel's purchase of the property, it had been used as a Bickford's Restaurant, a use permitted in a general business district.See Ordinance § 18.16.010, Use Codes 581 and 583. Martel acquired the property on or about September 15, 2005, with the intent to renovate the property and convert its use from restaurant to retail in order to open an adult videostore. "Retail Trade — General Merchandise" is also a permitted use in a general business district. See Ordinance § 18.16.010, Use Code 53. Before beginning renovations on the property, Martel applied to the Town Building Official for a building permit, as well as permits authorizing electrical, plumbing and other work (collectively, the "building permits"). The Town Building Official issued the requested building permits between October and December, 2005.
In applying for such building permits, Martel wrote on its applications to the Town that it intended to convert the property's use from a restaurant to a retail establishment. Martel did not disclose to the Town that it intended to open an adult videostore on the premises. The Town informed Martel — via a December 12, 2005 letter from its zoning enforcement officer — that the conversion of the property from "restaurant to retail" would require Martel to apply for development plan review, as required under Ordinance § 18.54.010. That section states that "[d]evelopment plan review is required for all permitted uses other than one-or two-family dwellings or accessory buildings." Ordinance § 18.54.010(A). The Ordinance further requires that "[n]o building permit may be issued for any building within the purview of this chapter except in conformance with an approved development plan review." Ordinance § 18.54.010(B). Additionally, the planning board must grant its approval "[f]or uses that are permitted by right under the zoning ordinance . . . other than one-or two-family residential and their accessory uses." Ordinance § 18.54.010(D)(2). Martel neither applied for the required development plan *Page 3 
review prior to the issuance of the building permits, nor received Planning Board approval for its proposed change of use.
During the fall of 2005, the Town took steps to regulate adult entertainment via its Ordinance, apparently in response to learning of Martel's intended use for the property. On November 17, 2005, the Town Planning Board recommended amending the Ordinance to define the term "Adult Entertainment Business," and to restrict the location of such uses to the industrial zoning district. After holding a public hearing, the Town Council approved these amendments at its meeting on January 3, 2006.
On January 20, 2006, Martel applied to the Town for development plan review. In its application, Martel indicated that it understood that an application for development plan review was not required because of the building permits the Town had issued in the fall of 2005. In a response letter dated February 1, 2006, the Town Solicitor informed Martel that it would not perform a development plan review of Martel's proposed change of use. The Town stated that Martel's intended use of the property conflicted with the newly passed zoning amendment restricting adult entertainment businesses to the industrial zoning district, rendering a development plan review unnecessary.
Pointing to the costs already expended on this project and the reliance it placed on the building permits issued in the fall of 2005, Martel filed the instant action against the Town. Martel contends that the Town should be equitably estopped from enforcing the amended Ordinance because of Martel's reasonable reliance on the building permits. Alternatively, Martel also seeks a declaratory judgment decreeing that the January 3, 2006 amendment to the Ordinance has no force and effect as applied to Martel. Martel has asked this Court to issue a writ of mandamus instructing the Town to commence the requested development plan review in *Page 4 
accordance with the Ordinance as it existed prior to January 3, 2006. Martel also claims that the Town intentionally interfered with its contractual relations and that the denial of its request for development plan review violated Martel's substantive due process rights. The Town has objected and filed its own motion for summary judgment, asking this Court to enforce the Ordinance amendment that prohibits adult entertainment businesses outside the industrial zoning district.
 Standard of Review
A party is entitled to summary judgment when an examination of the "pleadings, affidavits, admissions, answers to interrogatories" and other materials, viewed in a light most favorable to the non-moving party, reveals no "genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Stebbins v.Wells, 766 A.2d 369, 372 (R.I. 2001). In conducting this examination, the motion justice must draw all reasonable inferences in favor of the non-moving party. Id.
 Equitable Estoppel
The Ordinance, as amended, clearly prohibits the operation of adult entertainment businesses within a general business district. Conceding that its intended use of the property falls within the Ordinance's definition of an adult entertainment business, Martel argues instead that the Town should be equitably estopped from applying the amended Ordinance to Martel's request for development plan review. Martel claims that the Town is properly subject to estoppel because Martel reasonably relied, to its detriment, on lawfully issued building permits.
The Supreme Court has held that in order for equitable estoppel to apply, a claimant must establish the following elements:
 first, an affirmative representation or equivalent conduct on the part of the person against whom the estoppel is claimed which is directed to another *Page 5 
for the purpose of inducing the other to act or fail to act in reliance thereon; and secondly, that such representation or conduct in fact did induce the other to act or fail to act to his injury. El Marocco Club, Inc. v. Richardson, 746 A.2d 1228, 1233 (R.I. 2000) (quoting Providence Teachers Union v. Providence School Board, 689 A.2d 388, 391-392 (R.I. 1997) (further citations omitted)).
In the context of a zoning case, the Supreme Court further explained that:
 building permits lawfully issued for a permitted use should be immune to impairment or revocation by reason of a subsequent amendment to the zoning ordinance when the holders thereof, acting in reliance thereon in good faith, initiate construction in some reasonably substantial measure or incur some reasonably substantial obligation promoting such construction. Shalvey v. Zoning Board of Review of the City of Warwick, 99 R.I. 692, 699, 210 A.2d 589, 593-594
(1965).
This Court also bears in mind that "this relief is extraordinary and will not be applied unless the equities clearly must be balanced in favor of the [party] seeking relief under this doctrine." Greenwich BayYacht Basin Assoc. v. Brown, 537 A.2d 988, 991 (R.I. 1988).
Turning to the instant case, there is no doubt that retail use was a lawfully permitted use at the time Martel obtained its building permits. There is also evidence in the record that Martel did, in fact, act in reliance on such permits as it began renovations and expended certain sums of money. However, this Court expresses no opinion on whether such reliance was done in good faith or was sufficiently substantial so as to trigger application of the doctrine. Rather, this Court must first determine whether the building permits were lawfully issued, as the lawful issuance of a building permit is a prerequisite to the application of equitable estoppel. See Almeida v. Zoning Board of Reviewof Tiverton, 606 A.2d 1318, 1321 (R.I. 1992) (wherein the Court held that an illegally issued building permit may be revoked even when the applicant has relied upon that permit).
In determining whether a building permit has been lawfully issued, this Court finds that the case of Town of Johnston v. Pezza,723 A.2d 278 (R.I. 1999), is dispositive. The defendants *Page 6 
in Pezza had applied to the Town of Johnston's building official for a building permit to construct an asphalt batch mixing plant. Johnston's zoning ordinance required "an applicant for a proposed industrial use to submit a site plan to the [planning] board for its review and approvalbefore any submission of a building-permit application." Id. at 282 (emphasis in original). The defendants did not comply with this requirement before applying for, and receiving, a building permit.Id.
In holding the building permit invalid, the Supreme Court stated that Johnston's zoning ordinance "unmistakably requires an applicant to submit a site plan to the board for its approval before the building official can issue a permit." Id. at 283 (emphasis in original). The Court characterized this submission as a "condition precedent" to the later issuance of a building permit. Id. Because the defendants had not "even attempted to satisfy" this condition precedent, the Court found that the building official's "act of issuing the building permit without first obtaining an approved site plan from the board was ultra vires, and the [defendants] were not entitled to rely upon the inspector's unlawful issuance of the permit." Id.
Considering the case at bar, this Court finds that Martel did not even attempt to satisfy Ordinance § 18.54.010 requiring planning board approval for uses that alter or change the use of a property. As such, the Town Building Official's issuance of building permits prior to the planning board's approval of Martel's proposed use was done in direct contravention of Ordinance provisions. While Martel has pointed out that the Town's Building Official acted in good faith in issuing Martel's building permits — as he believed that development plan review was not required — such good faith cannot confer upon the Building Official the authority to *Page 7 
dispense with Ordinance requirements. See Pezza, 723 A.2d at 284 (a building official does not have the authority to waive compliance with provisions of the zoning ordinance).[1]
This Court finds that the issuance of building permits was in excess of the Building Official's statutory authority and therefore constituted an ultra vires act that did not result in the issuance of a valid building permit to Martel. This Court additionally finds that Martel's reliance on the building permits was misplaced as Martel was "not entitled to rely upon the . . . unlawful issuance of the permit."Pezza, 723 A.2d at 283; see also Technology Investors v. Town ofWesterly, 689 A.2d 1060, 1062 (R.I. 1997) ("estoppel cannot be applicable when the municipality's acts were clearly ultra vires"). This Court finds that Martel has not shown that it is entitled to the application of equitable estoppel and therefore declines to grant such extraordinary relief.
 Declaratory Judgment of Vested Rights
Martel has requested that this Court render a declaratory judgment that it has acquired a vested right to have its request for development plan review considered in light of the Ordinance provisions that existed when it was granted its first building permit on October 7, 2005. In effect, Martel is asking for a declaration that the Ordinance amendments of January 3, 2006, do not apply to Martel. In rejoinder, the Town argues that Martel never acquired any vested rights because of its failure to comply with applicable statutory and Ordinance provisions. Pursuant to G.L. 1956 § 9-30-1, this Court has the power to "declare rights, status, and other legal relations," and such declaration "may be either affirmative or negative and . . . shall have the force and effect of a final judgment or decree." *Page 8 
Section 45-24-44(a) of the Rhode Island General Laws requires a zoning ordinance to provide "protection for the consideration of applications for development that are substantially complete and have been submitted for approval to the appropriate review agency prior to enactment of the new zoning ordinance or amendment" (emphasis added). When an application has been submitted in compliance with that section, it "shall be reviewed according to the regulations applicable in the zoning ordinance in force [sic] at the time the application was submitted." G.L. 1956 § 45-24-44(c). In accordance with state law, Ordinance § 18.56.010 states that vested rights are created only at such time as an application for development is "substantially complete" and "has been submitted for approval to the appropriate review agency" of the Town.
This Court finds that Martel first applied for development plan review on January 20, 2006 — seventeen days after the Ordinance had been amended on January 3, 2006. The plain language of the Ordinance required Martel to submit its application for development plan review prior to the date of amendment in order for it to acquire a vested right to have its application considered under the pre-amendment version of the Ordinance. This Court finds that Martel did not comply with Ordinance § 18.56.010 and that, therefore Martel did not acquire any vested right to change the use of the property from retail to adult entertainment business.
Based on the foregoing, this Court finds and declares that Martel does not have a vested right to have its application for development plan review considered in accordance with the Ordinance as it existed prior to January 3, 2006. Rather, this Court finds that development plan review must be subject to the Ordinance provisions in effect as of the date that Martel applied for development plan review. *Page 9 
 Mandamus
Martel has also requested that this Court issue a writ of mandamus instructing the Town to perform a development plan review of Martel's application to change the use of its property. The Town argues that Martel is not entitled to mandamus because a development plan review is not a ministerial task. This Court has the power to issue such a writ pursuant to G.L 1956 § 8-2-16.
It is "well established that a writ of mandamus will issue only where the petitioners have a clear legal right to have the act done which is sought by the writ." Gormally v. Cannon, 119 R.I. 771, 776,383 A.2d 582, 585 (1978). In addition, the writ is only available "where the respondents have a ministerial, legal duty to perform such act without discretion to refuse" and the petitioner has no other adequate remedy at law. Id. It is also clear that "mandamus will not compel an officer to do a discretionary act." Greenwich Bay Yacht Basin Assocs. v.Brown, 537 A.2d 988, 991 (R.I. 1988). As is the case with the doctrine of equitable estoppel, a writ of mandamus is "an extraordinary remedy," one which this Court shall not grant lightly. Krivitisky v. Town ofWesterly, 849 A.2d 359, 362 (R.I. 2004).
The Ordinance requires development plan approval for "all permitteduses and special permit uses other than one-or two-family dwellings or accessory buildings." Ordinance § 18.54.010(A) (emphasis added). This Court will assume, without deciding, that this language requires that every application for development plan review be considered, regardless of whether or not it will ultimately be granted. For purposes of discussion only then, this Court will treat the commencement of a development plan review as a ministerial task and not subject to the Town's discretion. *Page 10 
As previously discussed, Martel's January 20, 2006 application for development plan review is subject to the Ordinance provisions in effect at that time. Martel has not challenged the Town's determination that the proposed use constitutes an adult entertainment business within the meaning of the amended Ordinance. Therefore, Martel actually applied for development plan review of a proposed change in use from restaurant to adult entertainment business, rather than to retail. It is also undisputed that adult entertainment businesses are now a prohibited use in the general business district.
Referring back to the clear language of the Ordinance, development plan review is required for "all permitted uses." Ordinance § 18.54.010(A) (emphasis added). Martel's proposed use is no longer a permitted use within the general business district. Based on the plain meaning of the Ordinance, this Court finds that Martel does not have a clear legal right to have the Town perform a development plan review for a proposed prohibited use. Any interpretation to the contrary would create an absurd result and will not be countenanced by this Court.See Jeff Anthony Properties v. Zoning Board of Review of the Town ofNorth Providence, 853 A.2d 1226, 1230 (R.I. 2004).
This Court declines to issue a writ of mandamus instructing the Town to conduct a development plan review of Martel's application to change the use of its property.
 Intentional Interference with Contractual Relations
Martel's claim against the Town for intentional interference with contractual relations is barred for failure to comply with procedural requirements contained within G.L. 1956 § 45-15-5. That section states that a party must notify a municipality of its claim for monetary damages at least forty days prior to commencement of legal action. Compliance with this requirement is a condition precedent to filing suit, as the purpose of the section is to provide a city or town with *Page 11 
the opportunity to settle claims without having to go to the expense of engaging in litigation. See Bernard v. Alexander, 605 A.2d 484 (R.I. 1992).
Here, Martel filed its complaint on May 3, 2006. Martel provided the Town with notice of its claim on May 4, 2006, one day after filing suit. This Court finds that Martel's claim for damages is barred by Martel's failure to comply with § 45-15-5. See Almeida v. Town of Tiverton,639 A.2d 982 (R.I. 1994) (wherein the Court affirmed a grant of summary judgment for the defendants based on the plaintiff's failure to present the town with proper notice of her claim).
Martel's reliance on United Lending Corp v. City of Providence,827 A.2d 626 (R.I. 2003) in an attempt to avoid summary judgment is misplaced. In that case, the Supreme Court stated that it has allowed a claim to proceed in violation of the notice requirements of § 45-15-5
when requiring "strict compliance with the statute does not comport with the notion of substantial justice." Id. at 633. The Supreme Court first noted that the plaintiff in that case had made three written demand notices for reimbursement of taxes that had been erroneously paid due to the city's own negligence. Id. at 633-634. The Court then found "that the city provided erroneous property tax information to [the] plaintiff and wrongfully threatened to sell its property at tax sale and then failed to rebate the taxes or even to provide counsel with the courtesy of a response to his demands." Id. at 634.
This Court finds that the Town did not commit such egregious acts in the instant case. Rather, this Court finds that it was Martel that provided incomplete information in its initial request for a building permit. Martel, not the Town, failed to comply with relevant Ordinance requirements in that it did not seek development plan review for its proposed change of use. In not heeding the clear terms of the Ordinance, Martel ran the risk that it would be bound by any *Page 12 
amendments to the Ordinance. In sum, this Court finds that this is not a case where requiring strict compliance with § 45-15-5 fails to comport with notions of substantial justice. This Court therefore refuses to overlook Martel's failure to properly notify the Town of its claim in accordance with § 45-15-5.
 Conclusion
This Court finds that Martel is not entitled to relief on its claim for equitable estoppel or its request for a declaratory judgment and issuance of a writ of mandamus. Martel's claim for monetary damages for intentional interference with contractual relations is barred for failure to provide the Town with proper notice of the claim. Furthermore, this Court has analyzed Martel's substantive due process claim and found that it is entirely without merit.[2]
Based on all of the foregoing, Martel's motion for summary judgment is denied. The Town's motion for summary judgment is granted. Martel's claim for intentional interference with contractual relations is dismissed without prejudice.
Counsel shall submit an appropriate order for entry in accordance with this Decision.
[1] Martel argues that Pezza is inapplicable because the "pervasive subtext in Pezza is the sordid circumstances under which the building permit issued." Martel's Mem. of Law in Further Supp. of its Mot. forSumm. Judgment and in Obj. to Defs.' Counter-Motion for Summ.Judgment at 7. This argument is unconvincing. A reading of the case shows that the Supreme Court's analysis focused on the building official's lack of authority to vary the terms of the zoning ordinance, not on any bad faith or wrongdoing by the parties involved.
[2] See Smithfield Concerned Citizens v. Town of Smithfield,907 F.2d 239, 244 (1st Cir. 1990) (when analyzing a substantive due process challenge to a zoning ordinance, "a court asks only whether a conceivable rational relationship exists between the zoning ordinance and legitimate governmental ends" (emphasis in original)). Here, the amendments to the Ordinance are conceivably related to the public health, safety, and welfare. See Id. at 246; see also DiRaimo v. City ofProvidence, 714 A.2d 554 (R.I. 1998) (upholding a zoning ordinance that allowed adult entertainment business as a permitted use only in the city's industrial zones).